### JAMES B. IRWIN, SR. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF LITCHFIELD (AC 15831)

Dupont, C. J., and Landau and Hennessy, Js.

Argued February 24—officially released May 6, 1997

---

*Kenneth R. Slater, Jr.*, for the appellant (plaintiff).

*Gail E. McTaggart*, for the appellee (defendant).

*William C. Franklin*, for the appellee (intervening defendant).

*Opinion*

DUPONT, C. J. The plaintiff appeals from the judgment of the trial court dismissing the plaintiff's appeal from the decision of the planning and zoning commission of the town of Litchfield (zoning commission), which had denied the plaintiff's application for a special exception and subdivision approval. The plaintiff sought to subdivide an approximately fifteen acre parcel of land, which was situated in a two acre residential zone, into four single-family residential lots, ranging from 2.1 to 6.1 acres in size. The application also sought a special exception for approval of two lots with less than 200 feet of road frontage.

The plaintiff claims that the trial court improperly determined that the zoning commission correctly concluded that the plaintiff's application should be denied because (1) the subdivision plan was not in keeping with the general policy goals of the town's plan of development, (2) the plan was too intensive and not harmonious or in keeping with the existing and probable future character of the neighborhood, and (3) the character of the land in the neighborhood was open space, farmland or lots much larger than two acres.

Prior to submitting his plan to the zoning commission, the plaintiff had sought approval from the Litchfield conservation commission (conservation commission) because the parcel contains wetlands that would be affected by development of the property.[1] After initial rejection, the plaintiff decreased the number of lots in the subdivision from five to four and increased the buffer area around the brook that flows through the parcel. The conservation commission then approved the plaintiff's application, which restricted development on more than 40 percent of the property and reduced wetlands impact by utilizing a common driveway for two of the lots, thus eliminating the need for a second wetlands crossing.

The zoning commission then denied the plaintiff's subdivision application on the ground that the proposed common driveway was prohibited by the regulations. The regulations permit common driveways only to interior lots[2] or to three or more full frontage

---

[1] Article II, § 2.3.6, of the Litchfield subdivision regulations requires that "[w]henever an application involves land regulated as an inland wetland or watercourse by the Litchfield Conservation (and Inland Wetlands) Commission, the applicant shall file a copy of the subdivision application with the Conservation Commission within 10 days after filing with the Planning and Zoning Commission. Any application not so filed shall be considered incomplete. The Planning and Zoning Commission shall give due consideration to any report filed by the Conservation Commission prior to rendering a decision on the subdivision application."

[2] Article VI, § 5A (8), of the Litchfield zoning regulations provides: "In any Residential Zone, as part of a subdivision, the Planning and Zoning Commission may approve two interior lots served by a single accessway provided:

"a. That the accessway has a minimum 50 foot width at all points, and

"b. The accessway is under joint ownership of the owners of the lots it serves, and

"c. A deed provision to this effect is approved by the commission's attorney, and

"d. The application approval is conditional upon the use of the said deed requirement, and

"e. In the R-30H Zone all of the above shall apply and in addition the traveled surface of the accessway shall be no more than 12 feet in width."

lots.[3] Here, because the common driveway was for two lots, one of which had full frontage, the town's zoning and subdivision regulations would not allow the common driveway.

The plaintiff then filed with the zoning commission the application for subdivision approval and a special exception that is at issue here. The only change from the previous application was that the lot lines were moved so that the two lots to be accessed by the common driveway now both qualified as interior lots, thus making the use of the common driveway proper according to the regulations. The wetlands impact did not change.[4] A special exception was required because the plan included interior lots.[5]

Public hearings were held on March 6 and April 3, 1995, pursuant to General Statutes § 8-3c. At a May 15,

[3] Article VI, § 5B (1) (b), of the Litchfield zoning regulations provides: "The number of lots permitted on a Common Driveway shall be more than two (2) but not more than a total of six (6) lots. There shall be no more than four (4) interior lots on a Common Driveway."

[4] Karen A. Grimes, who owns the adjacent property and is a defendant in this action, claims in this appeal that the zoning commission had no authority to grant the plaintiff's application because the plaintiff had not submitted the final application to the conservation commission for approval. The plaintiff does not deny that the final application was not submitted but claims that the conservation commission had already approved the application because the previous application was essentially the same. With respect to the effect on the parcel's wetlands, the applications were identical. The chairman of the conservation commission wrote, in a letter to the chairman of the zoning commission, that the plaintiff's new subdivision plan did not affect the previous approvals and permit. Thus, no new application was required. We agree with the plaintiff that, given the circumstances, the letter from the conservation commission was adequate to satisfy the requirements of General Statutes §§ 8-3c and 8-26.

[5] Article VI, § 5A, of the Litchfield zoning regulations provides in relevant part: "An interior lot is defined as a lot that does not meet the requirement for minimum lot width. (See Article IV)

"An interior lot may be permitted in any Residential Zone upon the granting of a Special Exception subject to the general standards of Article VIII, and subject to the following specific requirements . . . ."

Article IV sets forth the minimum lot sizes for the various zoning districts, including the dimension of lot width.

1995 meeting, the zoning commission voted five to two to deny the application. A letter dated May 16, 1995, was sent to the plaintiff, stating that "the Subdivision application with the proposed interior lots [is] too intensive for this limited and fragile piece of land and it does not comply with the following standards and requirements of the Zoning Regulations relating to a Special Exception for an Interior Lot(s) in a subdivision . . . . The Commission finds that the application does not meet the requirement that '[t]he applicant shall show that the design and layout of the subdivision with the proposed interior lots will be in keeping with the Town Plan of Development' . . . . The Commission finds that the application does not meet the requirement that '[t]he applicant shall show that the subdivision with the proposed interior lots will preserve important natural resource features as identified on the Town Plan of Development maps and other studies adopted by the Commission, including, but not limited to streambelt lands, farmlands (especially active farmland), land on ridge lines, and will result in the preservation of the natural landscape along a Town road or the view from a Town road or proposed subdivision road' . . . . The Commission finds that the proposed subdivision with the interior lots does not comply with 'the existing and probable future character of the neighborhood in which the use is located.' It is too intensive development for a limited and fragile piece of land . . . . The Commission finds that the proposed subdivision with the interior lots does not comply with '[t]he provision for creation of a harmonious relationship between proposed and existing buildings in the vicinity; specifically with regard to the visual relationship of said buildings in terms of their terrain, use, scale proportions and, particularly, the historic significance of the existing buildings.' " The portions of the letter in quotations are from sections of the Litchfield zoning regulations.[6]

---

[6] The text of the regulations that the zoning commission found the plaintiff's plan was violating is as follows:

The plaintiff appealed to the trial court pursuant to General Statutes § 8-8 (b) from the zoning commission's decision.[7] Karen Grimes, the owner of the abutting property, was allowed to intervene as a defendant.[8] In a memorandum of decision dated December 21, 1994, the

"5. Interior lots may be permitted in a subdivision only where the application meets the following criteria and requirements:

"a. General: The applicant shall show that the design and layout of the subdivision with the proposed interior lots will be in keeping with the Town Plan of Development.

"b. Specific: The applicant shall show that the subdivision with the proposed interior lots will preserve important natural resource features as identified on the Town Plan of Development maps and other studies adopted by the Commission, including, but not limited to streambelt lands, farmlands (especially active farmland), land on ridge lines, and will result in the preservation of the natural landscape along a Town road or the view from a Town road or proposed subdivision road." Litchfield Zoning Regs., art. VI, § 5A.

"4. In deciding upon a proposed Special Exception application, the Commission shall consider the following and record its findings in its meeting record. . . .

"b. The existing and probable future character of the neighborhood in which the use is located.

"c. The provision for creation of a harmonious relationship between proposed and existing buildings in the vicinity; specifically with regard to the visual relationship of said buildings in terms of their terrain, use, scale proportions and, particularly, the historic significance of the existing buildings." Litchfield Zoning Regs., art. VIII.

[7] General Statutes § 8-8 (b) provides: "Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

[8] Grimes participated in the zoning commission's hearings. She introduced evidence concerning the impact of this subdivision on the neighborhood and, specifically, on her own property. The exhibits include a letter from an appraiser who estimated that the plaintiff's subdivision would decrease the value of the Grimes' property by 5 to 10 percent because the quiet country appearance of the area would be undermined by the visible driveway adjacent to the Grimes' property. There was no evidence, however, of any undermining of property values as a whole in the neighborhood or in the town.

trial court affirmed the decision of the zoning commission. We granted certification of the plaintiff's appeal to this court.

It is unclear whether the zoning commission denied only the application for the special exception or denied both it and the application for subdivision plan approval. The zoning commission's reasons for denial, however, describe both. We, therefore, treat the zoning commission's action as a denial of both.

"[T]he special permit is not subject to the variance rule that it is to be issued sparingly. The . . . zoning commission . . . has already made the decision that the use authorized by the special permit is acceptable in the district if potential adverse side effects can be controlled or eliminated through the use of conditions on the permit or modifications of the plan. Hence the issue in special permit cases is how to mitigate side effects. In theory, the special permit is a device for delegating to an administratively acting agency power to decide whether a proposed land use falls within that class of uses as previously established by the local legislative body acting in 'its constituted role as a formulator of public policy.' . . .

"Since the special permit is an administrative device, the formal rule is that the granting agency cannot exercise any discretion in deciding whether to approve an application. Its role is to carry out the policy established by . . . the zoning commission that wrote the regulations. If the standards for issuance of the special permit have been met by the application, a permit must be issued." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992), pp. 178–79.

"In *Mobil Oil Corporation* v. *Zoning Commission*, 30 Conn. App. 816, 819–20, 622 A.2d 1035 (1993), we said: The terms special permit and special exception have the same legal import and can be used interchange-

ably. . . . A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values. . . . Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. . . . *A. P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 185, 355 A.2d 91 (1974).

"The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning [commission's] action must be sustained if even one of the stated reasons is sufficient to support it. . . . *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* 17 Conn. App. 53, 56–57, 549 A.2d 1076 (1988)." (Internal quotation marks omitted.) *Felsman* v. *Zoning Commission,* 31 Conn. App. 674, 677–78, 626 A.2d 825 (1993).

"A decision to deny any of these administrative review applications, or to subject them to conditions . . . must be based on sufficiently specific authority in the regulations to support a conclusion that the decision made is in accordance with the policies established by the legislatively acting commission that established the policy in the first place." T. Tondro, supra, p. 188.

"Failure to include sufficiently specific standards in the regulations establishing a reviewing procedure deprives the administratively acting agency of the

power to grant a permit. 'To hold otherwise, to permit an administrative agency to develop an ad hoc plan as a yardstick against which to measure any given proposal, is to substitute whimsy for sound judgment. . . . Giving an administrative agency such absolute power could deprive a landowner of his property, without due process of law. . . . Although due process is not intended to hold administrative agencies under a short leash, it is designed to restrain them from roaming at will over the adjudicative landscape.' " (Citations omitted.) Id., pp. 189–90, quoting *Monroe* v. *Middlebury Conservation Commission*, 187 Conn. 476, 484, 447 A.2d 1 (1982).

The zoning commission's first reason for denying the plaintiff's application is that the plaintiff did not show that the subdivision and interior lots "will be in keeping with the Town Plan of Development." Litchfield Zoning Regs., article VI, § 5A (5) (a). This standard, as set forth in the town's zoning regulations, is extremely vague and nearly impossible to satisfy.

The town plan of development, drafted in 1984, set forth certain goals for Litchfield. It does not specify particular standards for development but, rather, defines terms such as farmland, conservation areas and stream belts and states that the town should have a goal of preserving them. The town's zoning regulations, however, do not necessarily correspond with the development plan's lofty goals. If the town intended that the area in which the plaintiff's property is located be preserved as farmland, the zoning regulations needed to so specify. By using and attempting to apply such a vague standard, the town has made it nearly impossible for any developer to determine, with any certainty, whether a proposed plan would meet with the zoning commission's approval.

We cannot say that the plaintiff's plan is harmful to the stream belts in contravention of the plan of develop-

ment because the conservation commission, after considering a substantial amount of evidence, has already stated that it is not.[9] In fact, the use of the common driveway would seem actually to decrease deleterious effects to the wetlands.

The zoning commission's second reason for denying the plan, that the applicant did not show that the plan would preserve important natural resource features, we conclude is equally nebulous. As we have already stated, the plan does not harmfully impact the wetlands features of the land according to the conservation commission. The claim that a driveway leading to two lots will alter the view from the Grimes' property is not a reason, let alone a persuasive reason, for denying the application in its entirety.[10] Although several cases hold that zoning decisions made for aesthetic reasons are valid, the factual situations in those cases are contrary to the facts here. See *Carlson* v. *Fisher*, 18 Conn. App. 488, 506–507, 558 A.2d 1029 (1989) (allowing planning commission to impose design conditions on subdivision approval in order to preserve established character of town); *Farmington* v. *Viacom Broadcasting, Inc.*, 10 Conn. App. 190, 196, 522 A.2d 318, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987) (allowing town's injunc-

---

[9] General Statutes § 8-26 provides in relevant part: "If an application [for subdivision] involves land regulated as an inland wetland or watercourse . . . the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations . . . . The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. *In making its decision the commission shall give due consideration to the report of the inland wetlands agency. . . .*" (Emphasis added.) We recognize that "shall give due consideration" does not make the conservation commission's report binding, but, here, given the plaintiff's many changes and concessions with his applications and the conservation commission's ultimate acceptance, we find it extremely persuasive that the conservation commission did not find the plaintiff's plan to be harmful to the stream belt.

[10] We note that article VI, § 6.5.1, of the Litchfield zoning regulations requires that a common driveway have a gravel surface.

tive action to enforce condition of special permit that defendant dismantle existing broadcast tower because town was permitted "to impose conditions related to aesthetics and property values on the granting of the special exception"). While a large broadcast tower is visible to many people, the proposed residences on the properties in question here will be only partially visible through the trees and mostly only to the neighboring defendant Grimes. No one has alleged that the houses will be distasteful in design. The objection is to the fact that houses will be there at all. The fact that houses or a driveway will be visible is not a sufficient reason to deny the permit.

The trial court pointed to the Grimes' abutting property's identification in a historical and architectural resources survey as a consideration for denying the plaintiff's applications because the development would impair the " 'splendid view of the surrounding open land [and] scattered old trees in the vicinity.' " That the plaintiff's subdivision would alter slightly the Grimes' view is not a significant enough reason to deny the permit.

The remaining reasons that the zoning commission gave for rejecting the plaintiff's application relate to the subdivision requirements. The zoning commission stated that the subdivision with the interior lots does not comply with the existing and probable future character of the neighborhood and does not create a harmonious relationship between proposed and existing buildings in the vicinity. We disagree.

The "probable future character" of the neighborhood is not a sufficiently precise term that a reasonable person could follow. If the town desires a neighborhood to have a particular character in the future, it should zone the area accordingly. This neighborhood is presently zoned for single-family residential lots with a two

acre lot minimum. That is the existing character of the neighborhood. That is also exactly what the plaintiff proposed to build. The plaintiff's subdivision plan cannot be at odds with the present character of the neighborhood when it falls within all relevant requirements of the zoning regulations.

The defendants point to the case of *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, 32 Conn. App. 515, 630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994), as supporting the premise that as long as a zoning commission gives reasons for denying a special permit and the reasons are supported by the record, the courts must uphold the zoning commission's decision. *Whisper Wind* can be distinguished from the present case on the facts. In *Whisper Wind*, the plaintiff had sought approval from the zoning commission to excavate and remove sand and gravel from its land. The zoning commission denied the application on the ground that the use would not comport with the general health, safety and welfare requirements of the town's zoning regulations. The zoning commission concluded that the proposed use would not be harmonious with the existing neighborhood development, and it would conflict with traffic characteristics of the surrounding neighborhood when large trucks drove through, carrying the excavated material. Id., 517–18.

In the present case, the proposed use of the land does not disturb the general health, safety or welfare requirements of the town's zoning regulations. Also, the conclusion of the zoning commission here is that a town plan of development, rather than zoning regulations, would be contravened. The plaintiff seeks to build residences in a residential neighborhood. No traffic hazard is alleged; neither public health nor safety is endangered; no inconvenience to anyone is alleged. See *Felsman* v. *Zoning Commission*, supra, 31 Conn. App.

677–78. The only problematical aspect to the plaintiff's proposal is that two of four lots on a fifteen acre parcel are to be interior lots of 6.1 and 2.8 acres each, utilizing a shared driveway. This is hardly the case of asking for permission to excavate and drive large dump trucks through a quiet neighborhood. See *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, supra, 32 Conn. App. 517; see also *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission*, 150 Conn. 672, 680, 192 A.2d 886 (1963) (denying special permit for apartments in district restricted primarily to one-family dwellings because it would concentrate population, add to traffic congestions, and not be most appropriate use of land). The function of a special permit is to allow property owners to use their property as expressly permitted by zoning regulations, subject only to the protection of public health, safety, convenience, and surrounding property values. *Mobil Oil Corp.* v. *Zoning Commission*, supra, 30 Conn. App. 819. There is no evidence in the record before the zoning commission that the public health, the public's safety or convenience, or property values in the area as a whole would be detrimentally affected by the plan of the plaintiff submitted to the zoning commission.

We conclude that the trial court improperly upheld the zoning commission's denial of the plaintiff's application for subdivision approval and for a special exception.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal and ordering the zoning commission to grant the plaintiff's application for subdivision approval and a special exception.

In this opinion the other judges concurred.