[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative or record appeal by the plaintiffs, Lisanne Reedy and Carles Reedy, from a decision of the defendant, Planning Zoning Commission of the town of Westport, denying their application for a special permit to conduct a Group Day Care Home at their residence at 44 Gorham Avenue, Westport. The record indicates that the plaintiffs had been operating a family day care home, with permission from the state and local municipality, for six children. They then applied to the defendant Commission to conduct a Group Day Care Home, which permits up to 12 children.
The defendant rejected the application by a vote of five to one, and the plaintiffs appealed the decision to this court in accordance with General Statutes § 8-8(b). The plaintiffs were determined to be "aggrieved" because they are the owners of the subject premises for which the application to the defendant was made. Bossert Corp. v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39
(1968).
Group Day Care Homes are a permitted use in the Residence A zone, where the subject premises are located; section 11-2.2.2 of the Westport Zoning Regulations; but require application to the defendant Commission for a special permit and site plan approval. According to section 44-6 of the Regulations, in reviewing an CT Page 2079 application for such a permit, the defendant Commission shall consider all the standards for site plans as well as "the public health, safety and general welfare." In addition, this section of the Regulations requires that special permits: "(1) Be in conformance with the Town Plan of Development; (2) Not prevent or inhibit the orderly growth and development of the area; (3) Not have a significant adverse effect on adjacent areas located within the close proximity to the use; (4) Not interfere with pedestrian circulation; (5) Not have a significant adverse effect on safety in the streets nor unreasonably increase traffic congestion in the area, nor interfere with the pattern of highway circulation; (6) Not have a significant adverse effect on historical, archeological and/or paleontological sites; (7) Preserve important open space and other features of the natural environment related to the public health, safety and welfare; (8) Not obstruct significant views which are important elements in maintaining the character of the Town or neighborhood for the purpose of promoting the general welfare and conserving the value of buildings; (9) Not have a significant adverse effect on storm drainage, sewage disposal or other municipal facilities; and (10) Be in scale with and compatible with surrounding uses, buildings, streets and open spaces."
In rejecting the application, the Commission gave five reasons as follows: "(1) The use is far too intense for this property; (2) The use is too intensive for the neighborhood; (3) The lot is non-conforming and too small; (4) There is too much congestion; (5) The driveway is too narrow creating an unsafe condition; it does not comply with the Special Permit Standards."
The plaintiffs contend both in their complaint and briefs that, in addition to the defendant Commission and its staff conducting its preliminary proceeding and hearings in an unfair and oppressive manner, the defendant violated General Statutes §§ 8-2
and 8-3j, which provide that zoning regulations may not prohibit group day care homes in a residential zone, or treat family day care centers in a manner different than single family homes.
The standard of review by this court in connection with special permits was set forth in Irwin v. Planning Zoning Commission,244 Conn. 619, 711 A.2d 675 (1998), which reversed the Appellate Court decision in Irwin v. Planning Zoning Commission,45 Conn. App. 89, 95, 694 A.2d 809 (1997), which stated that "[i]f the standards for issuance of the special permit have been met by the applicant, a permit must be issued." The Supreme Court held that CT Page 2080 "[t]his is an incorrect statement of the law with regard to special permits." Id., 626. The Supreme Court made the following points: (1) the special permit process is "discretionary" and not purely ministerial;" Id., 626-27; (2) general considerations including "public health, safety and welfare" may be considered, as well as whether there will be "parking or traffic congestion" adversely affecting the neighborhood; Id., 627; (3) the issue for the trial court is to determine whether the Commission "correctly interpreted" the regulations and applied the relevant section to the facts "with reasonable discretion;" Id., 627-28; (4) in ruling on a special permit, the agency is acting in an administrative capacity and is "endowed with a liberal discretion;" Id., 628; (5) the only issue for the court to decide is whether the agency action was "unreasonable, arbitrary or illegal;" Id., 628; (6) although if the application meets all the standards the Commission must grant the application, the agency has the discretion "to determine whether the proposal meets the standards set forth in the regulations;" (emphasis in original) Id., 628; (7) the agency must not construe the regulations "beyond the fair import of their language;" Id., 629; (8) if the agency states the reasons for its action, the court's task is to "simply" determine "whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations;" Id., 629; (9) the court cannot substitute its judgment for that of the agency with respect to "factual questions," or the weight of the evidence "[i]f there is conflicting evidence in support of the zoning commission's stated rationale;" Id., 629; and (10) the decision of the agency is to be affirmed "if an examination of the record discloses evidence that supports any one of the reasons given;" Id., 629.
First, as to the claim that the defendant's action violates General Statutes §§ 8-2 and 8-3j, which prohibits a municipality from preventing a day care facility, the Westport Regulations do not prohibit such use. A Group Day Care facility is a permitted use, but subject to rules and regulations applicable to all special permits. Thus, there is not a violation of the above statutes.
This court's task is not to determine whether the defendant's ruling is right or wrong, wise or unwise, but only to determine whether there is reasonable support in the record for the reasons given by the defendant for its rejection of the plaintiffs' application. CT Page 2081
The record has been reviewed and there is sufficient support for the reasons that the defendant used to deny the application for a special permit.
The first reason given by the defendant was that the proposed use was "far to intense for this property." The defendant Commission heard from residents of adjacent and nearby properties that Gorham Drive was narrow and the dropping off and picking up of up to 12 children would cause noise, parking and traffic problems.
The second reason for the rejection of the permit application is that "the use is too intense for the neighborhood." The immediate neighbors opposed the application at the public hearing. One stated that the proposal would "increase noise, traffic flow and traffic jams. And it will reduce the values of the adjacent properties." The neighbors described the proposed setting as "commercial" with "yelling and the screaming and the crying and the adults yelling at the children to try to get them to behave is something that really is going to impact on the neighborhood in terms of people being able to enjoy the quiet solace that they expect in the neighborhood."
A next door neighbor spoke and said that he was opposed for two reasons. ""We value our privacy. We believe our privacy would be lost if we had 12 kids in the back yard right next to us. We have a kid on the way ourself (sic). We don't want a whole lot of noise next to our house. Also, in buying the house, we looked long and hard to find a place that wasn't too busy of a road. And was not exactly the easiest thing to do with our budget here in Westport, but we did find a place. I think that situation would change if this application were to go through. I think it would become much busier and much more dangerous and we are concerned about that."
The defendant Commission offered as its third reason that the plaintiffs' property is "non-conforming and too small." The defendant was referring to the fact that the plaintiffs' property is approximately four tenths (.4) of an acre, or 17,379 square feet, and is located in a Residence A zone, which requires a minimum of a half acre. Hence, the plaintiffs' property is legally nonconforming as to size.
The fourth reason was "congestion." A neighbor referred to two CT Page 2082 school buses that use Gorham Avenue "so there is a lot of bus transportation. . . . If you get a back-up and you've got a Coleytown bus coming this way, Kings Highway bus coming that way, it's gonna be a mess and it's going to be a mess in front of my house. . . . You've got people that will be backing up on the streets . . . it's just a disaster."
The fifth reason was that the driveway was "too narrow creating an unsafe condition." There was testimony that the driveway would be 14 feet wide, rather than the required 18 feet for commercial uses.
It is axiomatic that in an administrative appeal, a plaintiff has the burden of proving that "substantial evidence does not exist in the record as a whole to support the agency's decision."Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993). For the reasons stated above, the plaintiffs in this case have not sustained their burden. Accordingly, the decision of the defendant Commission is affirmed because its action is adequately supported by the record. The appeal of the plaintiffs is therefore dismissed.
Costs are to be taxed by the office of the chief clerk of this court in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 16th day of February, 2000.
William B. Lewis, Judge