## JAMES B. IRWIN, SR. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF LITCHFIELD
### (SC 15714)

Borden, Berdon, Norcott, Katz and McDonald, Js.

Argued January 22—officially released April 28, 1998

*Gail E. McTaggart*, for the appellant (defendant).

*William C. Franklin*, with whom, on the brief, was *Robert L. Fisher, Jr.*, for the appellant (intervening defendant).

*Kenneth R. Slater, Jr.*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The plaintiff, James B. Irwin, Sr., sought approval of a four lot subdivision on approximately fifteen acres of property that he owns in Litchfield, with a lot configuration consisting of two interior lots, necessitating a special exception under article VI, § 5A,[1]

---

[1] Article VI, § 5A, of the Litchfield zoning regulations provides in relevant part: "An interior lot is defined as a lot that does not meet the requirement for minimum lot width. (See Article IV)

"An interior lot may be permitted in any Residential Zone upon the granting of a Special Exception subject to the general standards of Article VIII, and subject to the following specific requirements:

"5. Interior lots may be permitted in a subdivision only where the application meets the following criteria and requirements . . .

of the Litchfield zoning regulations. The dispositive issue in this certified appeal is whether the Appellate Court was correct in reversing the trial court's affirmance of the denial of the plaintiff's special exception application by the defendant, the planning and zoning commission of the town of Litchfield (zoning commission).

The defendants[2] appeal from the judgment of the Appellate Court, claiming that it improperly concluded that the zoning commission cannot exercise any discretion in deciding a special exception application. The defendants also claim that the Appellate Court improperly substituted its own judgment for that of the trial court and the zoning commission, and improperly remanded the case with direction for the zoning commission to approve the special exception and subdivision applications. We agree and, accordingly, we reverse the judgment of the Appellate Court.

The following facts are undisputed. In connection with his plan to develop a residential subdivision, the plaintiff split off a 14.9 acre parcel of land from a larger eighty-three acre parcel of his real property adjacent to Hutchinson Parkway and Butternut Road in Litchfield. The property is located in an R-80 residential zoning district, which requires a two acre minimum lot

"a. General: The applicant shall show that the design and layout of the subdivision with the proposed interior lots will be in keeping with the Town Plan of Development.

"b. Specific: The applicant shall show that the subdivision with the proposed interior lots will preserve important natural resource features as identified on the Town Plan of Development maps and other studies adopted by the Commission, including, but not limited to streambelt lands, farmlands (especially active farmland), land on ridge lines, and will result in the preservation of the natural landscape along a Town road or the view from a Town road or proposed subdivision road. . . ."

[2] Karen A. Grimes, an abutting property owner, filed a motion to intervene as a defendant in this case and was granted intervenor status by the trial court. We refer to the zoning commission and Grimes collectively as the defendants.

size. Evidence in the record indicates that the property has steep slopes over 20 percent grade, a streambelt, ledge outcroppings and a watercourse through the property making it especially difficult to develop. The neighborhood is rural, contains historical farmhouses, and is generally characterized by large parcels of land used for farming.

The plaintiff, seeking to develop the 14.9 acre parcel of land, submitted applications for a five lot subdivision with the zoning commission and with the Litchfield conservation commission (conservation commission). The conservation commission approved a single wetlands crossing, but denied the application for the general subdivision plan. The plaintiff subsequently withdrew the application pending before the zoning commission.

In order to avoid a second wetlands crossing for an additional driveway, the plaintiff then submitted a second application for a four lot subdivision with two of the lots sharing a common driveway, which included a proposal to restrict permanently development on more than 40 percent of the property. The zoning commission denied the application, however, because the common driveway was intended to serve only two full frontage lots and the zoning regulations permit common driveways only to interior lots or to three or more full frontage lots.[3] *Irwin* v. *Planning & Zoning Commission*, 45 Conn. App. 89, 91–92, 694 A.2d 809 (1997).

---

[3] Article VI, § 5A (8), of the Litchfield zoning regulations provides in relevant part: "In any Residential Zone, as part of a subdivision, the Planning and Zoning Commission may approve two interior lots served by a single accessway provided:

"a. That the accessway has a minimum 50 foot width at all points, and

"b. The accessway is under joint ownership of the owners of the lots it serves, and

"c. A deed provision to this effect is approved by the commission's attorney, and

"d. The application approval is conditional upon the use of said deed requirement . . . ."

On December 7, 1994, the plaintiff then submitted a third subdivision application to the zoning commission in which he reconfigured the four lot design so that the two lots with the common driveway would qualify as interior lots. Because interior lots are permitted only by special exception,[4] the plaintiff also submitted an application for special exception for the two proposed interior lots. This special exception application is the subject matter of this appeal.

Pursuant to General Statutes § 8-3c (b),[5] the zoning commission held public hearings on the plaintiff's application on March 6, and April 3, 1995. On May 15, 1995, the zoning commission held its next meeting when it denied the special exception application by a five to two vote. The zoning commission then sent a letter to the plaintiff stating that "the Subdivision application with the proposed interior lots [is] too intensive for this limited and fragile piece of land and it does not comply with the following standards and requirements of the Zoning Regulations relating to a Special Exception for an Interior Lot(s) in a subdivision . . . . The Commission finds that the application does not meet the requirement that '[t]he applicant shall show that the design and layout of the subdivision with the proposed interior lots will be in keeping with the Town Plan of Development.' . . . The Commission finds that the application

Article VI, § 5B (1) (b), of the Litchfield zoning regulations provides: "The number of lots permitted on a Common Driveway shall be more than two (2) but not more than a total of six (6) lots. There shall be no more than four (4) interior lots on a Common Driveway."

[4] The terms "special exception" and "special permit" are synonymous and have been used interchangeably. See *A.P. & W. Holding Corp.* v. *Planning & Zoning Board,* 167 Conn. 182, 185, 355 A.2d 91 (1974); *Whisper Wind Development Corp.* v. *Planning & Zoning Commission,* 32 Conn. App. 515, 520, 630 A.2d 108 (1993), aff'd, 229 Conn. 176, 640 A.2d 100 (1994).

[5] General Statutes § 8-3c (b) provides in relevant part: "The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception . . . ."

does not meet the requirement that '[t]he applicant shall show that the subdivision with the proposed interior lots will preserve important natural resource features as identified on the Town Plan of Development maps and other studies adopted by the Commission, including, but not limited to streambelt lands, farmlands (especially active farmland), land on ridge lines, and will result in the preservation of the natural landscape along a Town road or the view from a Town road or proposed subdivision road.' . . . The Commission finds that the proposed subdivision with the interior lots does not comply with 'the existing and probable future character of the neighborhood in which the use is located.' . . . The Commission finds that the proposed subdivision with the interior lots does not comply with '[t]he provision for creation of a harmonious relationship between proposed and existing buildings in the vicinity; specifically with regard to the visual relationship of said buildings in terms of their terrain, use, scale proportions and, particularly, the historic significance of the existing buildings.' "[6]

---

[6] The Litchfield zoning regulations at issue in the denial of the special exception included articles VI and VIII. For the text of article VI, § 5A, see footnote 1 of this opinion.

Article VIII of the Litchfield zoning regulations concerning special exceptions provides in relevant part: "Uses specified in these regulations as Special Exceptions are declared to possess such special characteristics that each must be considered a special case. The following general procedures, requirements and standards apply to all such applications for a Special Exception and are to be considered in addition to any special requirements and standards for a Special Exception. . . .

"4. In deciding upon a proposed Special Exception application, the Commission shall consider the following and record its findings in the meeting record. . . .

"b. The existing and probable future character of the neighborhood in which the use is located.

"c. The provision for creation of a harmonious relationship between proposed and existing buildings in the vicinity; specifically with regard to the visual relationship of said buildings in terms of their terrain, use, scale proportions and, particularly, the historic significance of the existing buildings. . . ."

Pursuant to General Statutes § 8-8 (b),[7] the plaintiff appealed from this denial to the Superior Court,which granted Karen A. Grimes, an abutting property owner, permission to intervene in the appeal. The trial court subsequently dismissed the plaintiff's appeal and affirmed the decision of the zoning commission, on the basis that the zoning commission's decision was adequately supported by the record.

The trial court found that all four reasons offered by the zoning commission for denial of the special exception were pertinent considerations that were adequately supported by the record before it. Specifically, the trial court found that the zoning commission's finding "that the land is fragile is supported by the testimony of the experts as to the small buildable area, the streambelt concerns, the soil erosion concerns relating to steep slopes, [and] the septic system issues relating to steep slopes and soil types." The court also found that the zoning commission's denial for inconsistency with the town plan, which "specifically designates properties along Beach Street as 'prime and important farmlands' for preservation and advises that all 'private and public options shall be utilized for preservation,' " was adequately supported by the record. Furthermore, the trial court found that denial based on intensity was warranted because "the creation of the interior lots increases by one the number of lots possible on the property . . . ."

The plaintiff sought and was granted certification to appeal to the Appellate Court. The Appellate Court reversed the judgment of the trial court and remanded the case with direction for the zoning commission to

[7] General Statutes § 8-8 (b) provides in relevant part: "Except as provided in subsections (c) and (d) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

approve the special exception and subdivision applications. The Appellate Court concluded that because the plaintiff's plan satisfied all relevant requirements of the zoning regulations, the trial court had improperly upheld the zoning commission's decision because the commission had no discretion to deny the special exception. *Irwin* v. *Planning & Zoning Commission,* supra, 45 Conn. App. 101. This appeal followed.[8]

The defendants claim that the Appellate Court improperly concluded that the zoning commission cannot exercise any discretion in deciding a special exception application, and that the Appellate Court substituted its own judgment for that of the trial court and the zoning commission, resulting in an improper remand of the case. We agree.

In its decision, the Appellate Court stated: " 'Since the special permit is an administrative device, the formal rule is that the granting agency cannot exercise any discretion in deciding whether to approve an application. Its role is to carry out the policy established by . . . the zoning commission that wrote the regulations. If the standards for issuance of the special permit have been met by the application, a permit must be issued.' T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 178–79." *Irwin* v. *Planning & Zoning Commission,* supra, 45 Conn. App. 95. This is an incorrect statement of the law with regard to special permits.

We previously have recognized that the special permit process is, in fact, discretionary. In *Whisper Wind*

---

[8] We granted certification to appeal from the judgment of the Appellate Court limited to the following issues: "Under the circumstances of this case, did the Appellate Court properly (1) reverse the trial court's judgment dismissing the plaintiff's zoning appeal, and (2) remand the case with direction to grant the plaintiff's application for subdivision approval and for a special exception?" *Irwin* v. *Planning & Zoning Commission,* 241 Conn. 925, 926, 696 A.2d 1265 (1997).

Because of our determination of the first issue, it is unnecessary to address the second certified issue.

*Development Corp.* v. *Planning & Zoning Commission,* 229 Conn. 176, 177, 640 A.2d 100 (1994), we concluded that general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. Also, we have stated that "before the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood." *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission,* 222 Conn. 607, 613, 610 A.2d 1205 (1992). The Appellate Court has acknowledged that "Connecticut courts have *never* held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing." (Emphasis added.) *Connecticut Health Facilities, Inc.* v. *Zoning Board of Appeals,* 29 Conn. App. 1, 6–7, 613 A.2d 1358 (1992); see also T. Tondro, Connecticut Land Use Regulation (2d Ed. 1996 Sup.) p. 64.

"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 184–85, 355 A.2d 91 (1974); *Farina* v. *Zoning Board of Appeals,* 157 Conn. 420, 422, 254 A.2d 492 (1969). Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The [Appellate Court and] trial court had to decide whether the board correctly interpreted the section [of the regulations] and

applied it with reasonable discretion to the facts. *Pascale* v. *Board of Zoning Appeals*, 150 Conn. 113, 116, 117, 186 A.2d 377 [1962]; *Stern* v. *Board of Zoning Appeals*, 140 Conn. 241, 244, 99 A.2d 130 [1953]. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals*, 150 Conn. 439, 442, 190 A.2d 594 [1963]. *Schwartz* v. *Planning & Zoning Commission*, 208 Conn. 146, 152, 543 A.2d 1339 (1988)." (Internal quotation marks omitted.) *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, 218 Conn. 65, 72, 588 A.2d 624 (1991).

The plaintiff argues that "the Commission has no independent discretion to deny a plan which satisfies the standards contained in the special permit regulations." Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine *whether* the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific application before it.

Having determined that the zoning commission could exercise discretion in its determination of the special exception application at issue, it is now necessary to determine whether the zoning commission abused that discretion. If, in denying the special permit, the zoning

commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner. See *Double I Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 218 Conn. 72. "In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." *Zieky* v. *Town Plan & Zoning Commission*, 151 Conn. 265, 267–68, 196 A.2d 758 (1963). "[O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency." *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 401, 610 A.2d 620 (1992). If there is conflicting evidence in support of the zoning commission's stated rationale, the "reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission." *Whisper Wind Development Corp.* v. *Planning & Zoning Commission*, supra, 32 Conn. App. 523. "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 539–40, 525 A.2d 940 (1987).

The defendants claim that the application was properly denied because the plaintiff had failed to comply with all of the standards of the special exception set forth in the zoning regulations. Interior lots may be approved subject to the special exception standards of article VI, § 5A, of the zoning regulations, which contains specific standards and incorporates the general standards of article VIII. All of these standards must be met for approval of interior lots.

The zoning commission found that the application failed to comply with the standards enumerated in article VI, § 5A (5) (a) and (b), and article VIII (4) (b) and (c). See footnotes 1 and 6 of this opinion. In addition, the zoning commission found that the interior lot design was "too intensive development for a limited and fragile piece of land . . . ." The second reason offered by the zoning commission, based on article VI, § 5A (5) (b), was that "[t]he Commission finds that the application does not meet the requirement that '[t]he applicant shall show that the subdivision with the proposed interior lots will preserve important natural resource features as identified on the Town Plan of Development maps and other studies adopted by the Commission, including, but not limited to streambelt lands, farmlands (especially active farmland), land on ridge lines, and will result in the preservation of the natural landscape along a Town road or the view from a Town road or proposed subdivision road.' "

The plaintiff asserts that the Appellate Court correctly determined that the standard offered in the zoning commission's second reason was insufficient to deny his application, because the plan of development does not recommend any change to the zoning district where the plaintiff's property is located. He further asserts that "the [p]lan [of development] does not articulate standards for determining whether a particular development plan protects those resources but, instead, simply defines those resources and recommends that they be protected by voluntary efforts or through adoption of specific regulatory standards." The plaintiff also points out that "[g]eneralized policy goals stated in a municipal plan of development . . . cannot serve as the basis for denying a specific land development proposal," and cites *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 88, 629 A.2d 1089 (1993), cert. denied,

510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994), as support for this proposition. We are unpersuaded.

The zoning regulations refer to the plan of development in order to provide some guidance for applicants in interpreting the standards enumerated in the regulations. In *Smith*, we acknowledged that "[b]ecause the overall objectives contained in the town plan must be implemented by the enactment of specific regulations, the plan itself can operate only as an interpretive tool." Id. In that case, we agreed with the Appellate Court that the board incorrectly had denied the plaintiff's subdivision on the ground that it was inconsistent with the town plan. Id. In the present case, however, the zoning commission had broader discretion to make its determination about the plaintiff's special exception application than it would have had with a subdivision application. Moreover, the plaintiff's application was denied due to noncompliance with the special exception *regulations*, which refer to the plan of development, not because it did not comply with the plan of development. Indeed, the plan of development was used only as an aid for interpreting the standards in the regulations.

Article VI, § 5A (5) (b), of the zoning regulations identifies certain natural resource features for preservation including streambelts, farmlands, ridge lines and natural landscapes, and it states that the list is not exhaustive and other natural resource features are identified in the plan of development. The maps included in the plan of development classify Butternut Brook as a protected minor streambelt. The plan of development also lists the primary reasons for and benefits of streambelt preservation, including the need "to curtail pollution, siltation, sedimentation and erosion; to protect water quality; to reduce the hazard of flood loss; to promote scenic beauty; to provide quality recreation areas; to protect important ecosystems; to link wetlands with

corridors of open space; and to enhance the quality of life by providing breathing space and visual balance to urban uses." Litchfield Plan of Development, Environment and Historic Plan (1984).

The potential danger to the streambelt from the plaintiff's application is well documented in the record. Although there was some conflicting testimony, Thomas Daly, a civil engineer, submitted a report to the zoning commission noting that "the proposed piping of intermittent watercourses [would eliminate] . . . any natural mitigation which is now occurring from pollutants that may be flowing through the pipes under Hutchinson Parkway" causing pollutants to flow directly into Butternut Brook. Another report by James G. MacBroom, a professional engineer, stated that there is "erosion potential" from the piping of stormwater from Hutchinson Parkway. Also, MacBroom indicated in a report that the proposed driveway would bury an active spring that supplies water to the stream. In addition, a wetlands evaluation of the plaintiff's application recommended that "[b]ased upon the dominant upland soil types" the buffer area to preserve the streambelt should "extend 200–300 feet upslope of Butternut Brook or associated wetlands," and noted that the proposed construction activities on the four building lots would occur within 200 feet of the wetlands associated with the brook. Thus, the zoning commission acted within its discretion in finding that the streambelt would not be adequately preserved by the plaintiff's application.

Next, the regulations identify land on ridge lines as a significant natural condition worthy of preservation and special treatment. The plan of development refers to ridge tops, which can be recognized by "shallow to bedrock soils," and provides that ridge tops are "highly visible and key parts of our physical environment . . . ." Litchfield Plan of Development, Environment

and Historic Plan (1984). Ridge tops "tend to be somewhat self-preserving, because of the steepness and the difficulty of meeting the requirements of the Sanitary Code for human use." Id.

Submissions to the record contained in Daly's report show that slopes greater than 20 percent and ledge exist on the property, severely limiting the buildable area of the lots. The percentage of total lot area that is buildable for lots three and four, which are the subject of the special exception, are 15 percent and 26 percent respectively. His engineering report suggested that due to the steep slopes, "this type of land . . . is very difficult to develop and is poorly suited for a residential subdivision." The same report also observed that "the amount of ledge and proximity of ledge to the proposed septic systems was inconsistent with the plan," which can adversely impact upon groundwater and wetlands. A report completed by Kenneth C. Stevens, Jr., a soil scientist, stated that "[c]onstruction of septic fields on steeply sloping, compact glacial till soils pose special design considerations that must take into account perched watertables, extremely slow permeability, hydraulic capacity and the possibility of effluent breakout at the toe of slope of the fill," and that "[t]he grading plan does not adequately address how surface runoff is going to be diverted around the houses and septic fields."

On the basis of these reports, which were before the zoning commission, we conclude that the record adequately supports the zoning commission's decision to deny the special exception. In view of the potential detriments to the streambelt and land on ridge lines, the zoning commission's second finding of noncompliance with the special exception regulations is adequately supported by the record and, as such, we must uphold the decision of the zoning commission.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion BORDEN, BERDON and KATZ, Js., concurred.

MCDONALD, J., dissenting. I respectfully disagree and would affirm the opinion of the Appellate Court for the reasons stated therein.