[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Dr. Gerald Lieberman (Lieberman), appeals from a decision of the defendant, the Planning Zoning Commission of the Town of Weston (Commission), denying the plaintiff's application to modify an existing special permit.
Lieberman is the owner of the premises located at 4 Goodhill Road, Weston. Connecticut. (Appeal, ¶ 1). Lieberman owns the property as trustee for "L-Properties, "a Connecticut partnership comprised of himself and his wife, Susan Lieberman. (Return of Record [ROR], Items 11, 44). In 1983, Lieberman was granted a special permit by the Zoning Board of Appeals (ZBA) to conduct his medical practice as a home occupation. (ROR, Items 1, 89). Lieberman conducts a pediatric practice at that location. In January, 1995, Lieberman applied to the ZBA for a variance to §§ 343.1[1] (clearly subordinate use) and 343.4[2]
(occupancy of less than 1/2 of the total floor area) of the Weston zoning regulations in order to expand his office space. (ROR, Item 92). This application was denied by the ZBA on January 24, 1995, for failure to show the requisite undue hardship. (ROR, Items 94, 96).
Lieberman sent a letter dated 11/4/96 to the Weston Planning Zoning Commission requesting an amended special permit to expand his pediatric office at 4 Goodhill Road. (ROR, Item 1). This letter was treated as an application to modify an existing special permit. Lieberman sought to add 1,680 square feet to the premises, with 840 square feet devoted to medical use and the other 840 square feet for residential use. (Appeal, ¶ 3). The Commission held public hearings on December 16, 1996 (ROR, Item 10) and January 6, 1997 (ROR, Item 74), and discussed the application on January 21, 1997 (ROR, Item 78); February 3, 1997 (ROR, Item 82); and February 24, 1997 (ROR, Item 83).
The Commission voted 6-0 to deny the application on February 24, 1997. (ROR, Item 83). Notice of the decision was published in the Westport Forum. (ROR, Item 86). Lieberman was also notified by letter dated February 25, 1997. (ROR, Item 84). The Commission stated its reasons for denial as: "Dr. Lieberman does not currently nor intends to use 4 Goodhill Road as his fixed, permanent and principal residence as required by Section 343.2 of CT Page 8001 the Weston Zoning Regulations and that the use as a doctor's office is not subordinate to his residential use as required by Section 343.1 of the Weston Zoning Regulations." (ROR, Items 85, 86).
Lieberman appeals from the Commission's denial of his application. Lieberman alleges that the Commission acted illegally, arbitrarily and abused its discretion in that:
(a) members of the Commission demonstrated bias and predisposition by questioning Lieberman's truthfulness, allowing irrelevant public comments, and exposing Lieberman's living arrangements to public scrutiny; (b) me Commission demonstrated a lack of familiarity with me Zoning Regulations by certain references in its written decision to Lieberman, dated February 25, 1997, denying his application; (c) the decision is not supported by the record; (d) the decision is not consistent with the applicable regulations; (e) the Commission improperly performed a zoning enforcement function in ruling upon Lieberman's application; (f) the Commission acted without authority in requiring and ruling upon the application because the regulations do not contain any provisions or standards regarding amending existing special permits; (g) the health, safety and welfare of the community is not affected by Lieberman's place of residence; and (h) the Commission did not heed the advice of its own legal counsel regarding the application and the definition of domicile.
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board to the Superior Court. "It is . . . fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." Med-Trans ofConnecticut. Inc. v. Dept. of Health Addiction Services,242 Conn. 152, 158, 699 A.2d 142 (1997). An owner of the subject property is aggrieved and entitled to bring an appeal. WinchesterWoods Associates v. Planning Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991).
This court finds that Lieberman has properly pleaded and proved aggrievement based on the allegations contained in counts 1, 3 and 4 of the appeal. Lieberman's testimony, and the warranty deed for the subject property which was offered into evidence.
This court also finds that this appeal was commenced in a timely fashion, by service of process upon the proper parties in compliance with General Statutes §§ 8-8 (b)(e) and (f).[3]
CT Page 8002
"When ruling upon an application for a special permit, a planning and zoning [commission] acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Citations omitted; internal quotation marks omitted.) Irwin v. Planning ZoningCommission, 244 Conn. 619, 627, ___ A.2d ___ (1998). The trial court must determine "whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law — to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Citations omitted.) Irwin v. Planning ZoningCommission, supra, 244 Conn. 627-28.
"Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special [permit], as it applies the regulations to the specific application before it. "Id., 628. "If, in denying the special permit, the zoning commission construed the special exception regulations beyond the fair import of their language, then the zoning commission acted in an arbitrary and illegal manner. . . . In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations." (Citation omitted; internal quotation marks omitted.) Id., 628-29.
The Commission treated Lieberman's application to expand his home occupation as one to modify an existing special permit. The court rejects Lieberman's argument that the Commission was without authority to require this application. An owner cannot CT Page 8003 unilaterally expand an existing specially permitted use. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 24.11 and (1998 sup.) § 24.11. The Commission applied the standards found in the regulations under "home occupation," as it would to any new application for a special permit to conduct a home occupation. Lieberman's argument that the regulations were without standards specifically for amending existing special permits is without merit.
Lieberman concedes in his post-hearing memorandum that with regard to expansion of his pre-existing use, he is bound to conform to the regulations as they existed on the date of his application, and not by the regulations as they existed in 1983, when he originally received a special permit for conducting a home occupation. The Commission determined that Lieberman was not "domiciled" at the subject property as required by § 343.2 of the applicable zoning regulations. Section 343.2 deals with home occupation as an accessory use of the principal dwelling and provides: "Such accessory uses(s) shall in all cases be pursued by the owner/occupant(s) in the dwelling where he/she is domiciled or by a member of his/her family who is domiciled in the dwelling in which the owner/occupant is domiciled. (Owner is someone who owns not less than one-quarter (1/4) interest in the property.). " Section 610 of the applicable zoning regulations defines domicile as "a person's fixed, permanent and principal residence for legal purposes such as voting."
Lieberman contends, however, that 4 Goodhill Road is his domicile within the meaning of the zoning regulations because it is his residence "for legal purposes such as voting." Lieberman focuses on the phrase in the definition of domicile, contained in § 610 of the zoning regulations, "for legal purposes such as voting." Lieberman's voter registration (ROR, Item 13) and driver's license list 4 Goodhill Road as being where he lives. "The rules of statutory construction apply to the interpretation of local regulations. . . . We look first to the language of the regulation to determine the intent of the enacting body. . . . If the language of the regulation is ambiguous, the court can look to its purpose as an aid in construing it." (Citations omitted.)Double I Ltd. Partnership v. Planning Zoning Commission,218 Conn. 65, 73, 588 A.2d 624 (1991)
While Lieberman emphasizes the last part of the definition of domicile, the first part of the definition reads "a person'sfixed, permanent and principal residence." (Emphasis added.) The CT Page 8004 phrase "for legal purposes such as voting" in the same sentence as "fixed, permanent and principal" is illustrative. Domicile is not defined in the regulations as simply a person's address or residence for voting purposes. Residence is modified by "fixed, permanent and principal. Webster's Ninth New Collegiate Dictionary defines principal as: "1: most important, consequential, or influential: chief." A person, with more than one residence may be expected to register to vote at his "chief" or principal residence, hence, the example, "for legal purposes such as voting." Residence for voting purposes is just an example of one factor used in determining domicile.
Webster's Ninth New Collegiate Dictionary defines domicile as: "2 a: a person's fixed, permanent, and principal home for legal purposes. In fact, the dictionary definition mirrors the regulations, except the regulations add the example of "such as voting."
Black's Law Dictionary defines domicile as: "A person's legal home. That place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. . . . A person may have more than one residence but only one domicile. . . . The established, fixed, permanent, or ordinary dwellingplace or place of residence of a person, as distinguished from his temporary and transient, though actual, place of residence."
The determination of domicile is a factual one. "To constitute domicil, residence at the place chosen for the domicil must be actual, and to the fact of residence there must be added the intention of remaining permanently; and that place is the domicil of the person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with the present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home. . . . [T]his intention must be unqualified and not conditional upon the happening of a future event. It must be an intention to make a home in fact, and not an intention to acquire a domicil." (Internal quotation marks omitted.) Sullivan v. Sullivan, 17 Conn. Sup. 79, 83 ___ A.2d ___ (1950); see also Smith v. Smith, 174 Conn. 434, 439, 389 A.2d 756
(1978).
The Commission was unpersuaded that 4 Goodhill Road was Lieberman's domicile. Lieberman has two residences, one at 340 CT Page 8005 Goodhill Road and the other at 4 Goodhill Road. It is a well established principle that a person can have more than one residence, but only one domicile. Lieberman concedes that he lives at 4 Goodhill only part-time. (ROR, Item, 7). He admits that 4 Goodhill is primarily lived in by his elderly mother-in-law, but states that either he or his wife stay there "several times a week" to supervise his mother-in-law. (ROR, Item 7). Lieberman stated that "at various times" his children have lived at 4 Goodhill. (ROR, Item 7). He also indicated, however, that during his 1983 application he had stated that his wife-and five children would live at 340 Goodhill because 4 Goodhill was too small for the family. (ROR, Item 7). Lieberman argues that any requirements regarding his residence/living arrangements at 4 Goodhill, beyond those he admits to already meeting, is an attempt to place a requirement of full-time residency into the regulations where one does not currently exist. The Commission's finding that Lieberman was not domiciled at 4 Goodhill does not improperly add conditions which do not appear in the regulations. The commission could reasonably have determined based on an evaluation of various factors, that 4 Goodhill was not Lieberman's domicile, despite his assertions to the contrary.
Factual determinations and the credibility of witnesses are matters within the province of the Commission. Mobil Oil Corp. v.Zoning Board of Appeals, 35 Conn. App. 204, 209, 644 A.2d 401
(1994). Lieberman was registered to vote at 340 Goodhill Road until February, 1995, when he indicated a change of address to 4 Goodhill. (ROR, Item 13). The commission could reasonably have discounted the voter registration as evidence of domicile, since, notably, the address change occurred shortly after Lieberman's application for a variance was denied. (See ROR, Item 98 p. 15) Additionally, voter registration is only one factor to be considered in determining domicile.
This court finds that the Commission did not construe § 343.2 of the zoning regulations beyond the fair import of its language. The definition of domicile contained in § 610 of the zoning regulations comports with the definition given by the courts and with its dictionary definition. The court also finds that the Commission applied the regulations with reasonable discretion to the facts. Accordingly, this court finds that the Commission did not act illegally or arbitrarily in denying Lieberman's application for modification of a special permit.
The Commission also denied Lieberman's application on the CT Page 8006 basis that the medical use is not subordinate to the residential use as required by § 343.1 of the zoning regulations.
The Commission's determination is supported by the record and is not illegal or arbitrary. Webster's Ninth New Collegiate Dictionary defines subordinate as: "to treat as of less value or importance." Lieberman testified that he has 2,000 patients. (ROR, Item 98, p. 53). He further testified that his office hours are 9-5 Monday through Friday, and 9-12 on Saturdays. (ROR, Item 98 p. 50). The Commission also performed a site walk, and could make personal observations. (ROR, Item 98 p. 23). Based on this evidence, along with the evidence regarding Lieberman's residential use of the premises, the Commission did not construe the subordinate use provision beyond the fair import; of its language. The court finds that the Commission applied this provision with reasonable discretion to the facts.
This court finds that the Commission's denial of Lieberman's application is sustainable on either of the two grounds given. The Commission's decision must be sustained if the record supports any one of the reasons given. Irwin v. Planning ZoningCommission, supra, 244 Conn. 629.
For the foregoing reasons, Lieberman's appeal is dismissed.
EDDIE RODRIGUEZ, JR., JUDGE