[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Northern Capital Region Disposal Facility, Inc. (NORCAP) appeals the decision of the defendant plan and zoning commission of the town of East Windsor denying the plaintiffs application for a special use permit for the operation of a wood chipping business on its property in that town. The commission acted pursuant to General Statutes § 8-3,8-3c and applicable plan and zoning regulations of the town. The plaintiff appeals pursuant to § 8-8. The court finds in favor of the defendant commission.
The facts essential to the court's decision are undisputed and are fully reflected in the record. The plaintiff owns the property in question on Rye Street in East Windsor, located in an M-1 industrial zone. That zone allows the operation of a wood chipping business, which is within the definition of "volume reduction facility" in the regulations as interpreted by the commission, subject to obtaining a CT Page 6320 special permit.
On October 21, 1999, the plaintiff applied to the defendant commission for a special permit to conduct a wood chipping business on the property, and the commission held a public hearing on the application over a two day period, November 9 and December 14, 1999. At the hearing, the plaintiff was represented by counsel and presented testimony from its professional engineer and a report of an expert in acoustics. The town planner participated in advising the commission. Many townspeople testified in opposition to the application.
Following the hearing, on February 8, 2000, the commission met and voted, four to one, to deny the application. The four commissioners who voted to deny the application expressed the following reasons as the bases for their decision: 1) the project would produce excessive noise, 2) the project would produce a fire hazard, 3) the project would produce excessive traffic, 4) the wood chipping operation would be conducted outdoors in violation of regulations, 5) the project would be incompatible with the town's plan of development, and 6) there was significant public opposition to the granting of the permit.
The court finds that the plaintiff, who owns the property and filed the application which is the subject of the commission's decision, is aggrieved by the decision.
In its brief and at oral argument, the plaintiff advances essentially three arguments in support of its appeal: 1) that the commission was not authorized to consider whether the project would be compatible with the town's plan of development, 2) that there was insufficient evidence to support the commission's decision with respect to excessive traffic, fire hazard or noise; and 3) that the plaintiff's application did not receive the same or equal treatment as that of a comparable business in the town.
It is helpful at this point to recall several general principles of the law relating to the role of the commission and the court in special permit cases. We previously have recognized that the special permit process is, in fact, discretionary . . . (We have also) concluded that general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. Also, we have stated that before the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood . . . Generally, it is the function of a zoning board or commission to decide CT Page 6321 within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply . . . In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. (Citations and internal quotation marks omitted.) Irwin v. Planning Zoning Commission, 224 Conn. 619,626-629 (1998).
In the present case, as noted, the commission based its decision in part on its determination that the project as planned would produce excessive noise and traffic and would present a fire hazard. If there is evidence in the record to support the commission's findings with respect to any one of these factors, the decision must be affirmed.
Section 9.1.2.11 of the zoning regulations provides in relevant part that an operation in this industrial zone may "Produce no industrial noise in excess of 50 dBA as measured from the property line of the lot. . . ." Evidence in the record indicates that the plaintiff intended to utilize two wood grinders at the site and would construct a berm to reduce the sound level at the property line. The plaintiffs expert submitted a report, which is in the record, stating that one such wood grinder would produce a "property line sound level of approximately 48 dBA with the berm in place." However, the expert significantly qualified his conclusions, noting that weather conditions "can affect the actual far-field sound level either higher or lower than predicted." And the expert's final conclusion was equally uncertain: "Given the multiple sound sources, the variability of acoustic propagation due to outdoor conditions and outdoor transmission paths that exist, and quality of workmanship that ultimately occurs during construction, it is notpossible to quantify the exact sound levels that would occur." (Emphasis added.) The commission's determination that the project would produce noise levels in excess of that permitted by the zoning regulations is plainly supported by evidence in the record and provides a firm basis for sustaining the commission's decision.
There is also significant evidence in the record to support the commission s determination that the project as planned would present a fire hazard, which is, of course, prohibited by the zoning regulations. Section 9A.3.c.1. The town's fire marshall rendered a written report citing the danger of spontaneous combustion, the difficulty of fighting a fire occurring in a "compost heap/stockpile of mulch and wood chips," CT Page 6322 and the great deal of manpower, perhaps even from surrounding towns, that would be required to fight the fire. Another professional firefighter testified at the public hearing to the same effect. The plaintiff argues that it would operate its business so as to minimize these risks; by transporting the processed chips out of the area promptly, for example. But even if there is "conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission." Irwin v. Planning Zoning Commission, supra 244 Conn. 629. In short, the court cannot second guess the commission's determination that the plaintiff's project would present an unacceptable fire hazard.
Another reason cited by the commission for denying the application for the permit was that the regulations, as interpreted by the commission, require that an activity such as contemplated here must be conducted inside a building, rather than outdoors as planned by the plaintiff. In this regard, section 9A.5, establishing minimum standards for "volume reduction facilities" provides in subsection f. that "All operations shall be conducted indoors, except for temporary storage of processed material which may be outdoors with appropriate containment to be approved by the commission.
"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." Irwin v. Planning Zoning Commission, supra,244 Conn. 627-628. The court concludes that the commission reasonably interpreted the regulations in this case as requiring the plaintiffs wood chipping operation to be conducted indoors. Since the application plainly contemplated an outdoor operation, the commission was justified in denying it.
Although the law and the undisputed facts set forth above are sufficient to affirm the commission's decision, the court will briefly address the other arguments advanced cited by the plaintiff in support of its appeal. The court agrees that there is insufficient evidence in the record to support the commission's finding that the project would generate an unacceptable amount of traffic. In the court's view, the evidence in the record on this subject is at best speculative and anecdotal. The court also agrees that the commission's reliance on the town's plan of future development and the alleged incompatibility with the plaintiffs project is misplaced. A zoning commission cannot deny an CT Page 6323 application for a special permit if the application satisfies the requirements set forth in the special permit regulations. This is so even if the town's plan of future development would point in a different direction. Finally, the court has considered the plaintiffs claim that the commission discriminated unfairly against it in denying its application while allowing a neighboring business to conduct a wood chipping operation. The record fails to show that the operation conducted by that other business was sufficiently similar to that proposed by the plaintiff to support the charge of discrimination. Furthermore, the plaintiff bases its claim on the ground that the alleged unequal treatment demonstrates that the commission's decision was arbitrary and unreasonable. As noted above, the court has found that several of the stated reasons for the decision are reasonably based on evidence in the record and are, therefore, by definition, not unreasonable and not arbitrary.
For all of the foregoing reasons, the commission's decision is affirmed and the plaintiffs appeal is dismissed.
 _____________________ MALONEY, JUDGE