[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal brought pursuant to § 8-8 of the Connecticut General Statutes. The plaintiff, R.F.K. Greenwich Enterprises, Inc. (hereinafter, the "Plaintiff") appeals from a decision of the Greenwich Planning and Zoning Commission (hereinafter, the "Commission") unanimously denying the Plaintiff's application for a site plan approval and special permit approval.
The property, owned by the plaintiff, which is the subject of this appeal, is a 6.7 acre parcel located at 33-81 River Road, Greenwich, Connecticut. The site is located in the Waterfront Business zone (hereinafter the "WB-Zone") as set forth in the Building Zone Regulations of the Town of Greenwich. The property, adjacent to the Mianus River, is currently a boat marina and a 17,500 square foot non-conforming office/warehouse building.
The Plaintiff's proposal for the site was to be called the Beacon Point Marina and Yacht Club. The application, as proposed, provided, in relevant part, for the following:
1. 260 in-water rental boat slips, 16 guest/transient slips, retail boat display slips, and in-water storage space for up to 25 rowing sculls.
2. A 75 seat public restaurant with service bar and no more than 30 outdoor seasonal dining seats in a new one and one-half story building.
3. The construction of 12,800 square foot office building to replace an existing 17,500 square foot general office/warehouse building.
4. 21 guest rooms, which the Commission defines as a hotel
5. A swimming pool, marine store, marina sales office and other support and storage space.
6. Renovation and expansion of existing buildings.
7. Public walkway along the Mianus River. CT Page 13423
The proposed application, submitted on or about November 5, 1999, would increase the square footage of the development on the site from an existing area of 33, 040 square feet to 68,687 square feet. The plaintiff states that the proposed square footage is less than half of the "permitted" floor area for the site as defined under the applicable provisions of the Building Zone Regulations.
A public hearing on the application was held on December 7, 1999. The applicant, Mr. Rick Kral, asked the Commission to continue the matter until January 4, 2000. Mr. Kral asked for the extension so that he could "continue to work with the community and the town to try and bring them a good, quality marine project."
The Commission held lengthy public hearings on the Application on January 4, 2000 and on January 27, 2000.
Following deliberations on March 13, 2000, the Commission voted unanimously to deny the Application.
It is a well settled principal of law that the review of a local Zoning Commission's decision by the Superior Court is "limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably" Raczkowski v. Zoning Commission, 53 Conn. App. 636, 639.
"Our law is that the action of the commission should be sustained if even one of the stated reasons is sufficient to support it" Frito Lay,Inc. v. Planning and Zoning Commission, 206 Conn. 554, 576.
The terms "special permit" and "special exception" have the same legal import and may be used interchangeably." The A.P. W. Holding Corp. v.Planning and Zoning Board of the City of Milford, Et Al, 167 Conn. 182,185.
When acting upon an application for a special permit, although a zoning commission acts in an administrative capacity, the "special permit process is in fact discretionary." Irwin v. Planning And ZoningCommission, 244 Conn. 619, 626.
The plaintiff in the Irwin case argues that "the Commission has no independent discretion to deny a plan which satisfies the standards contained in the special permit regulations." Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations. If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special CT Page 13424 permit regulations are met, then it can no longer deny the application. The converse, however, is equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception as it applies the regulations to the specific application before it." Irwin v. Planning and Zoning Commission, supra, 244 Conn. 619,628.
As previously stated, the site is in the WB-Zone. Section 6-107 of the Greenwich Zoning Regulations reads as follows:
Sec. 6-107. USE REGULATIONS AND SPECIAL REQUIREMENTS FOR WATERFRONT BUSINESS ZONE.
(a) Statement of Policy and purposes (5/11/87)
 Waterfront properties in the Town of Greenwich are an extraordinaiy and limited resource. It is therefore the policy of the Planning and Zoning Commission to control the uses and intensity of development in the Waterfront Business Zone so as to enhance the value of waterfront land for the intended purpose of retaining and encouraging commercial uses which depend on a waterfront location while protecting natural resources. (5-11/87).
"Public Yacht Club" is an undefined use in the Greenwich Zoning Regulations
Section 6.5 of the Regulation, Definitions, defines a hotel: "(30) Hotel shall mean a building or portion thereof, kept, used, maintained, advertised or held out to the public, containing thirteen (13) or more rooms used for sleeping accommodations for guests, and providing lodging with or without meals
Using Group 7b of the Regulations permits "food service, other than drive-ins, having no more than 750 square feet gross floor area, when subordinate and clearly incidental to a water dependent use. . . ."
The Commissions Staff Report should have alerted the Applicant that the restaurant, hotel and general office may not be considered a part of a "public yacht club."
The report reads in part as follows:
"The Application is deficient in that the applicant has not submitted any new zoning amendment proposal for allowing, restaurant, general CT Page 13425 office an [sic] hotel uses on site in the WB-Zone. The submission of this site plan and special permit application for such non-water dependent uses in the WB-Zone, without any zoning amendment, is unusual and precedent setting"
In an attempt to steer away from the definition "hotel", the plaintiff referred to the proposed 21 guest rooms as the Public Yacht Club's ancillary 21 guest rooms.
During the public hearing, the plaintiff stated it would be willing to accept a reduction in the number of guest rooms from 21 ro 12. However, no modified plan was submitted.
This court finds that the Commission acted properly in denying the plaintiff's application because the application failed to comply with the relevant zoning, site plan and special permit standards.
Neither a restaurant nor a hotel is an allowed use in the WB-Zone.
Non-water dependent uses such as the restaurant, hotel and general office use comprised the primary uses on the Site and were in direct conflict with the purposes and dictates of the applicable regulations.
In a detailed four page March 21, 2000 letter to the plaintiff's attorney, the Commission articulated its reasons for denying the Application.
This court finds, without rejecting the other reasons for the denial, that the most compelling of the reasons given for the denial of the application is the following:
"WHEREAS, the Commission finds that the proposed restaurant of 4,653 square feet on the first floor and 2,140 square feet of "club rooms" on the second floor (in which food could be served), the 12,800 square feet of general office use and the 15,858 square feet of hotel space for 21 rooms and meeting rooms are not water dependent uses as described in Section 6-100 Use Group 7, and the total combined square footage of these proposed non-conforming uses would in fact not be accessory uses, but would become the primary uses on site with over 1/2 of the total square footage of buildings (35,451 square feet total of non-water dependent uses out of 68,687 total square feet proposed gross of all buildings) and would eliminate land for future water dependent uses with the restaurant/club hotel and office uses, and therefore the Commission finds that the proposed site plan/special permit does not meet the standards of Section 6-100 Use group 7b or Section 6-107 WB-zone, and further is not in conformance with the Plan of Conservation and development." CT Page 13426
The commission's decision is upheld and the plaintiff's appeal is dismissed.
Tobin, J.