[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiffs Bancroft Brook LLC and B M Enterprises, Inc. appeal the decision of the defendant planning and zoning commission of the town of South Windsor denying the plaintiffs' application for a special exception/site development plan approval for the construction and operation of a Senior Residence Development (SRD) on their property in that town. The commission acted pursuant to General Statutes § 8-3,8-3c and applicable plan and zoning regulations of the town. The plaintiff appeals pursuant to § 8-8. The court finds in favor of the CT Page 13896 plaintiffs.
The facts essential to the court's decision are undisputed and fully reflected in the record. Plaintiff Bancroft Brook LLC is the owner of a 9.11 acre parcel of land in South Windsor. Plaintiff B M Enterprises, Inc. holds an option to purchase the property. The land is in a Rural Residential district, zoned R-40. Applicable zoning regulations allow the construction and operation of a Senior Residence Development providing housing for the elderly upon the obtaining of a special exception and site plan approval from the defendant commission.
In October 1998, the plaintiffs applied for a special exception/site plan approval for an SRD consisting of twenty dwelling units on their property as well as a resubdivision. The requested resubdivision would carve out a single family residential lot, which would be adjacent to the SRI) parcel. The commission convened a public hearing on November 18, 1998, which was continued to January 12, 1999, and concluded at that time. On February 16, 1999, the commission met and voted to deny the plaintiffs' application for SRI) approval. The commission approved the resubdivision creating the single family residential lot.
In its decision denying the SRI), the commission cited four reasons, set forth below verbatim:
 "1. Serious reservations about siting a high — density development directly adjacent to an industrial zone with existing industrial uses, due to the ongoing noise complaints from other residential developments abutting industrial zones.
 2. Locating a multi — family development in the rural, historic Main Street area is inappropriate. This would set a precedent for future high — density development applications west of Route 5, which is an area whose rural character the Commission desires to preserve and maintain. Commissioners indicated that the density should be kept low in this area for both prevention of noise complaints and preservation of rural character.
 3. This site is not within reasonable proximity to community facilities or amenities which serve the needs of elderly residents.
 4. The proposed density is too high for the site." CT Page 13897
It is this decision which is the subject of this appeal.
It is stipulated by the parties that the plaintiffs are owners of the property which is the subject of the commission's decision. They are, therefore, aggrieved by that decision and have standing to bring this appeal.
In their brief and at oral argument on this appeal, the plaintiffs advance essentially three arguments in support of their appeal: 1) that the commission misinterpreted and illegally applied the applicable regulations; 2) that there was insufficient evidence of excessive noise emanating from the industrial zone; and 3) that one of the commissioners was biased and acted so as to deprive the plaintiffs of a fair hearing.
Before addressing the specific issues raised by this appeal, it will be helpful to restate several general principles of the law relating to the role of the commission and the court in special permit cases. If an application for a special permit satisfies the requirements of applicable regulations and statutes, the commission must grant it. But this does not mean that the commission's review of the application is a mere formality. "We previously have recognized that the special permit process is, in fact, discretionary (We have also) concluded that general considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. Also, we have stated that before the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood . . . Although it is true that the zoning commission does not have discretion to deny a special permit when the proposal meets the standards, it does have the discretion to determine whether the proposal meets the standards set forth in the regulations. If during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true. Thus, the zoning commission can exercise its discretion during the review of the proposed special exception, as it applies the regulations to the specific application before it. In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations . . . The agency's decision must be sustained if an examination of the record discloses CT Page 13898 evidence that supports any one of the reasons given. (Citations and internal quotation marks omitted.) Irwin v. Planning ZoningCommission, 244 Conn. 619, 626-629 (1998).
The first reason cited by the commission as a basis for its decision is that noise from the nearby industrial zone might engender complaints from residents of the SRI). The principal flaw in this reasoning is that there is nothing in the regulations that supports it. All of the regulations that might be considered even remotely pertinent to the proposal in this regard are focused on potentially adverse effects that the project might have on the existing neighborhood, not on potential problems that the neighborhood might have on the SRD. Thus, for example, Regulations sec. 4.1.12.d.1. requires that "traffic impacts will not be detrimental to the residential character of the neighborhood." So, although the commission is "required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood," Irwinv. Planning and Zoning Commission, supra, 244 Conn. 627; even if noise is in the same category as parking and traffic congestion, the commission has no authority to reject a special permit application on the ground that the applicant's property would be adversely impacted. Although noise that already exists in the neighborhood might very properly be a concern of the applicant and later of someone contemplating moving into one of the units, it would seem to be none of the commission's business in its consideration of this application.
The commission's concerns are expressly based on "ongoing complaints from other residential developments abutting industrial zones." This would be relevant to the plaintiffs' application only if there was substantial evidence that there is also significant and undue noise emanating from the industrial property that is near the plaintiffs' proposed project. Such evidence as there is, however, is at best vague and unsubstantiated. The most egregious indication of the unreliability of this evidence is the statement made during the public hearing by one of the commissioners, Patricia Porter, who said that she herself had made two recent complaints about noise generated by a trucking company on the property nearest the plaintiffs' SRD. Later, when questioned under oath at a deposition called by the plaintiffs, Commissioner Porter admitted that her statement at the public hearing was false.
Further, and most significantly, on the noise issue, the court notes that South Windsor has enacted an ordinance establishing a "noise pollution standard," the purpose of which is to control the volume of noise emanating from a particular site. The ordinance sets noise limits for the different zones in the town, including the industrial zones, and it prohibits an individual or a business from emitting noise beyond its own boundary in excess of the applicable limit. This ordinance applies to CT Page 13899 the industrial zone nearest to the plaintiffs' property in the residential zone, which is the subject of this appeal. There is no evidence in the record that the noise emanating from the industrial zone into the plaintiffs' property is in excess of the applicable limit or that any of the businesses generating noise in that industrial zone have been the subjects of enforcement action pursuant to the ordinance. It is noteworthy in this regard that the commission's stated reason for denying the plaintiffs' application is that the commission anticipates noisecomplaints. not noise violations.
The defendant commission argues that the ordinance would not adequately protect the residents of the SRI) because the many exceptions to the enforcement provisions mandated by state law and regulations allow a legal but nonetheless bothersome level of noise. In effect, the commission says that the noise justifies the denial of the plaintiffs' application even though the noise level complies with the applicable regulations. This argument illustrates one of the fundamental flaws in the town's reasoning in rejecting the special permit. The commission concedes that the application conforms to the requirements of existing regulations, in this case the noise ordinance, but nevertheless rejects the application on the basis that the regulations are inadequate. In essence, the commission seeks to establish a higher or different standard for the current application than that already established by existing regulations. The law does not afford the commission such discretion in considering an application for a special permit that complies with the current regulations. If the town is not satisfied that current regulations accomplish its goals, the proper course is to change the regulations.
The commission also argues, apparently in the alternative, that if it were forced by complaints from SRD residents to enforce the noise ordinance against businesses in the industrial zone, that would be contrary to the requirement in the regulations that the project have "minimal impact on surrounding properties." The commission s interpretation of this requirement is plainly erroneous. "Impact," in this context, obviously does not mean the effect that due enforcement of the law might have on a violator. The commission's reasoning, if adopted, would logically require it to reject any application for an SRD on the basis that the residents might insist that the government enforce laws that restrict the conduct of business — pollution prevention, traffic control, outdoor advertising, are just some examples that come to mind. The short answer to the commission's argument in this regard is that the government should enforce duly enacted laws without waiting for citizen complaints and without regard for the "impact" that such enforcement might have on the violator. CT Page 13900
Finally, the plaintiffs point out that the commission's approval of the new residential subdivision lot, which is directly adjacent to the industrial zone, is inconsistent with its assertion that noise emanating from that industrial zone will be annoying or harmful to residents. In its brief to the court, the commission in effect concedes that the residents of the new lot might be just as adversely affected by the noise as the SRD residents, but since there will be at most only one family on the lot, the commission claims that its actions are "a reasonable compromise between the interests of the town in minimizing problems with noise" and the interests of the plaintiffs in the use of their property. The point that the commission seems to miss is that its actions should be based on the protection of all its citizens, that the protection of just one individual from illegal noise, or any other illegal activity, is as necessary as is the protection of many. If the commission was truly acting to protect its citizens from the harmful effects of noise from the industrial zone, it would not have approved a residential subdivision directly adjacent to the source of the noise even if only one person would be a victim. (It's entirely likely, of course, that a whole family will occupy the new lot, perhaps even a family that includes elderly people.) In approving the subdivision as a "compromise," however, the commission undermines its entire argument that excessive noise emanating from the industrial zone is a problem that can legitimately be a basis for official action; that is, can be a basis for denying the plaintiffs' application.
For the reasons set forth above, the court concludes that there was insufficient evidence to support the commission's finding that there was noise in excess of the legal limit emanating from businesses in the industrial zone to the plaintiffs' property. Further, the commission abused its discretion in denying the plaintiffs' application on the basis that noise from such businesses would harm or annoy SRI) residents in the absence of evidence that such noise exceeds the legal limit.
The second reason given by the commission for denying the plaintiffs' application is that a multi — family development is "inappropriate" in the Main Street area of town. In its brief, the commission cites section 4.1.12.d.6. of the regulations in support of this reason. That section requires that the SRD proposal be "consistent with the goals and objectives of the Town Plan of Development." One of the goals of the Plan of Development is to establish a "Rural land use category" of certain land in the town zoned for residential use. This "category" is "characterized by the Community's lowest intensity land uses. The primary land uses to be encouraged are: agriculture; open space; nature preserves; and passive recreation. Residential land uses would be limited to single-family homes on large lots only, with recommended minimum residential density far exceeding one acre for every home." The CT Page 13901 plaintiffs' land is located within this geographical "category." The town's zoning regulations do not, however, provide these limitations on the plaintiffs' property, which is located in a residential A-40 zone. In addition to the single family homes on large lots endorsed by the town plan, the regulations currently in force for that zone permit professional offices, boarding houses, two family dwellings, and SRD's by special permit. That is to say, the town's duly enacted regulations have not caught up with the vision of the area set forth in the town plan.
In Irwin v. Planning Zoning Commission, supra, 244 Conn. 631, the Supreme court reaffirmed the general rule that "because the overall objectives contained in the town plan must be implemented by specific regulations, the plan itself can operate only as an interpretive tool," citing Smith v. Zoning Board of Appeals, 227 Conn. 71 (1993). In theIrwin case, the court approved the administrative agency's reliance on the town's plan of development but "only as an aid for interpreting the standards in the regulation. "
In the present case, in rejecting the SRI) permit as "inappropriate" in the "rural Main Street area," the commission is not using the town plan as a tool for interpreting the existing zoning regulations, which allow SRD's by special permit, but rather, the commission is seeking to implement the goals of the town plan in the absence of specific zoning regulations accomplishing those goals. Such action exceeds the authority of the commission.
The third reason cited by the commission for denying the application is that the project would not be "within reasonable proximity to community facilities" for elderly people. The applicable regulation is section 4.1.12.d.8., which requires that:
 8. The location of the SRD facility is within reasonable proximity to community facilities or amenities which serve the needs or elderly residents, or is within reasonable proximity to indoor/outdoor activity centers, or is within close proximity to or contains permanent open space land. (Emphasis added.)
It is undisputed that the plaintiffs' project includes the donation of fifteen acres of land surrounding the SRD to be designated as permanent open space. Thus, the application complies with this section of the regulations, which requires reasonable proximity to community facilities only as an alternative to open space. The commission's argument that the open space must be suitable for hiking by possibly fragile or unstable CT Page 13902 elderly citizens finds no support in the plain language of this regulation.
The last reason cited by the commission for denying the application is that "the proposed density is too high for the site." It is undisputed that section 4.1.12.f., as applied to the project set forth in the plaintiffs' application, sets the maximum density at eight units per buildable acre, subject to an overall limit of twenty units. The site contains 7.89 buildable acres, and the proposal calls for twenty units. This is a "density" of 2.53 units per acre, well within the requirements of the applicable regulation.
The commission argues that it has the discretion to impose tighter density limits within those contained in the regulations. In this case, the commission contends that its conclusion that the density of the plaintiffs' project is excessive is justified by evidence in the record of "poor drainage conditions." The court has examined the record in this regard. The record discloses, first, that the project was approved by the town's Inland Wetlands and Watercourses and Conservation Commissions. During the course of the public hearing before the defendant commission, the subject of drainage received some comment from town officials, the public, and the plaintiffs' engineer. There is considerable evidence in the record indicating that all drainage concerns were adequately addressed by the plaintiffs' final construction plans and to the satisfaction of the town's professional staff The fact that the subject was discussed and that some members of the public were not satisfied with the final plans is not substantial evidence which would support the commission's decision in this regard. The court concludes that the commission's reasoning in rejecting the application insofar as it is based on the "density" of the project has no support in the regulations or in the evidence,
In Irwin v. Planning Zoning Commission, supra 244 Conn. 628, our Supreme Court states the familiar rule setting the high bar that a plaintiff must scale in order to overturn a decision of the commission: "In applying the law to the facts of a particular case, the (commission) is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal" In the present case, for the reasons set forth above, the court concludes that the commissions stated reasons for denying the plaintiffs' application for a special exception/site development plan approval are not supported by evidence in the record or by provisions of applicable law or regulations. The commission's decision may not, therefore, be affirmed.
The appeal is sustained. CT Page 13903
Maloney, J.