[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On October 11, 2001, by way of a letter to the commission, the Wiznias filed an application requesting a special permit to create lot 16, a rear lot in a proposed twenty-five lot subdivision named Walnut Grove Estates. (Return of Record [ROR], Item P.) The proposed subdivision application was filed separately on May 3, 2001. (ROR, Item A.) The commission received the special permit application on November 5, 2001; (ROR, Item EE); and a public hearing was held on November 19, 2001. (ROR, Item V.) At a December 17, 2001 meeting, the commission voted, by majority, to deny the application. (ROR, Item EE.) The Wiznias timely commenced this appeal on January 8, 2002, challenging the commission's decision.
 JURISDICTION
General Statutes § 8-8 (b) provides in pertinent part that "any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located." "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
 Aggrievement
"[P]leading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) Harris v. Zoning Commission,259 Conn. 402, 409, 788 A.2d 1239 (2002). Aggrievement is a factual issue, "and credibility is for the trier of the facts." (Internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning ZoningCommission, 256 Conn. 674, 703, 780 A.2d 1 (2001). An owner of property that is the subject of an application is aggrieved for the purpose of CT Page 3831 bringing an appeal and a plaintiff may prove aggrievement at the time of trial; Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 308, 592 A.2d 953 (1991); or "by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) Quarry Knoll II Corp. v. Planning ZoningCommission, supra, 703.
In the present appeal, the Wiznias allege aggrievement as the owners of the property affected by the commission's decision. (Appeal, ¶¶ 1, 2.) At trial, Robert Wiznia testified that he and his wife have owned, and continue to own, the property affected by the commission's decision. The Court finds the Wiznias have sufficiently alleged and proven aggrievement.
 Timeliness and Service of Process
General Statutes § 8-8 (b) provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (f) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
At trial, the parties stipulated to the fact that the commission's decision was published in the New Haven Register on December 27, 2001. This appeal was commenced by service of process on the town clerk, Stephanie Ciarleglio, and the Woodbridge planning and zoning commission clerk, Kristine Sullivan, on January 8, 2002. The Court finds the appeal was commenced in a timely fashion by service of process on the proper parties.
 SCOPE OF REVIEW
"The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal." R R Pool Patio v. Zoning Board of Appeals, 257 Conn. 456, 470,778 A.2d 61 (2001). "The [commission's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given . . . The evidence . . . to support any such reason [however] must be substantial." (Internal quotation marks omitted.)Heithaus v. Planning Zoning Commission, 258 Conn. 205, 221,779 A.2d 750 (2001). "The credibility of witnesses and the determination of issues of fact are matters solely within the province of the CT Page 3832 [administrative] agency." (Internal quotation marks omitted.) DeBeradinisv. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220 (1994).
"[E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, supra, 258 Conn. 221. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks omitted.) DeBeradinis v. ZoningCommission, supra, 228 Conn. 200. "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) Francini v. Zoning Boardof Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994).
"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citation omitted; internal quotation marks omitted.)Harris v. Zoning Commission, supra, 259 Conn. 420. "The [decision] must be sustained if even one of the stated reasons is sufficient to support it . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208. "[C]ases in which we have held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency couples its communication of its ultimate decision with express reasons behind that decision." Harris v. Zoning Commission, supra, 420-21.
A letter of notification of decision addressed to the Wiznias from the commission reveals that the reason for the majority vote denying the special permit application was that the "proposed use of rear Lot #16 was not made necessary by any unusual features peculiar to the land in question as set forth in section 3.43(b)" of the Woodbridge zoning CT Page 3833 regulations. (ROR, Item EE.) Accordingly, the Court finds the commission issued a "formal collective statement of reason for its actions." Bloomv. Zoning Board of Appeals, supra, 233 Conn. 208.
 DISCUSSION
As set forth above, the commission denied the Wiznias' special permit application to "allow Lot 16, as identified and shown on the [proposed] subdivision application, as a rear lot." (ROR, Item P.) The proffered reason for the denial was that the "proposed use of rear Lot #16 was not made necessary by any unusual features peculiar to the land in question as set forth in Section 3.43(b)" of the Woodbridge zoning regulations. (ROR, Item EE.)
The Wiznias appeal on the basis that the commission acted illegally, arbitrarily, and in abuse of its discretion in that the application conformed with the subdivision and zoning regulations and should therefore have been approved; and the commission's denial was inconsistent with prior approvals of rear lots in other subdivisions.[1]
(Appeal, ¶ 7.)
Lot 16 is part of Walnut Grove Estates, a proposed twenty-five lot subdivision of an approximately seventy-three acre parcel; (ROR, Item U3C); which is located off of Northrop, Ansonia and Racebrook Roads in the town of Woodbridge. (ROR, Item A.) The property is within a zone A district; (ROR, Item J1F, p. 2); which permits single-family residential buildings. (ROR, Item GG, p. 15.)
 I
The Wiznias first argue that the commission acted arbitrarily, illegally, and in abuse of its discretion by failing to approve the application because the "application met the criteria established by [Woodbridge zoning regulation] Section 3.43." (Wiznias' Brief, p. 11.) The Wiznias contend that their special permit application required automatic approval as it was directly related to their subdivision application and met the requirements of the applicable regulations because the use of lot 16 as a rear lot was necessary due to its unusual features. (Wiznias' Brief, pp. 6-8.) The Wiznias contend further that although they could create a greater number of lots in the proposed subdivision without the creation of rear lots, the creation of a rear lot would be less disturbing to the land and should therefore be permitted. (Wiznias' Brief, p. 9.) The Wiznias additionally argue that the phrase "the land in question" contained in § 3.43(b) refers to the unusual features of the proposed rear lot that render its creation necessary, not CT Page 3834 the unusual features of the entire subdivision. (Wiznias' Reply Brief, p. 3.)
In opposition, the commission argues that its decision to deny the special permit application was within its discretion; (Commission's Brief, p. 14); and is reasonably supported by the record. (Commission's Brief, p. 12.) The commission further argues that Woodbridge zoning regulations § 3.43(b) refers to "a parcel to be subdivided and not a rear lot that has arbitrarily been mapped by an engineer as part of a subdivision plan." (Emphasis in original.) (Commission's Brief, p. 16.) The commission contends, therefore, that "[t]he `use' of a rear lot here was obviously not necessary to subdivide the parcels at issue and to approve [rear lot 16] by special permit would have violated Section 3.43."Id. The commission additionally contends that pursuant to General Statutes § 8-3c (b), it gave due consideration to the inland wetlands agency's denial of the Wiznias' subdivision application in reaching its decision.[2] (Commission's Brief, p. 17.)
Our Supreme Court has "recognized that the special permit process is, in fact, discretionary . . ." (Internal quotation marks omitted.) Irwinv. Planning Zoning Commission, 244 Conn. 619, 626, 711 A.2d 675
(1998). "Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process . . . If the special permit process were purely ministerial there would be no need to mandate a public hearing." (Emphasis in original; internal quotation marks omitted.) Id., 627.
"The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) Barberino Realty Development Corp. v. Planning Zoning Commission, 222 Conn. 607,612, 610 A.2d 1205 (1992). "A special permit enables a property owner to use his property in a manner expressly permitted by the local zoning regulations . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values." (Internal quotation marks omitted.) Heithaus v. Planning Zoning Commission, supra, 258 Conn. 215-16. "[B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns . . . would CT Page 3835 adversely impact the surrounding neighborhood." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra, 244 Conn. 627.
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity . . . [I]t is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Citations omitted; internal quotation marks omitted.) Irwin v. Planning ZoningCommission, supra, 244 Conn. 627.
"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it." (Internal quotation marks omitted.) Doyen v. Zoning Board ofAppeals, 67 Conn. App. 597, 603, 789 A.2d 478; cert. denied, 260 Conn. 901,793 A.2d 1088 (2002). On appeal, the court must "decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts . . ." Irwin v. Planning Zoning Commission, supra, 244 Conn. 627-28. "If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application." Id., 628.
"Although the position of the municipal land use agency is entitled to some deference the interpretation of provisions in the ordinance is nevertheless a question of law for the court." (Citation omitted; internal quotation marks omitted.) Doyen v. Zoning Board of Appeals,supra, 67 Conn. 603. "When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." Planning Zoning Commission v. Gilbert, 208 Conn. 696, 706, 546 A.2d 823
(1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra, 244 Conn. 628.
Woodbridge zoning regulations § 3.43 governs the creation of rear lots and provides: "The Commission may authorize the issuance of a special permit, with or without conditions, to allow on a rear lot any use otherwise permitted in the Zone if it finds that such lot provides for the best development of the land and that the public health and welfare are not adversely affected. The approval of a rear lot shall be considered only in the following instances: (a) In the case of an CT Page 3836 existing rear lot: if the Commission determines that the lot has been unintentionally landlocked or unintentionally deprived of minimum lot frontage on an accepted street; (b) In the case of a parcel to be divided into two or more lots: if the Commission determines that the use of a rear lot is made necessary by unusual features peculiar to the land in question, such as difficult drainage, difficult configuration, temporary flooding, steep topography, public utility lines or easements." (ROR, Item GG, p. 29.) Section 3.43(b) further provides that "[i]t is not the intent of these Regulations to increase the density of land development by further division of existing house lots nor, in the case of a new subdivision, to encourage the creation of rear lots." Id.
In the present appeal, the Wiznias submitted an application for a special permit to create a rear lot, not to seek approval for a use on an existing rear lot. Thus, only subsection (b) of § 3.43 is applicable.
The minutes of the commission's working session, dated December 17, 2001, indicate that the commission considered a number of factors in reaching its conclusion, including the intent of the regulations disfavoring rear lots and the inland wetlands agency denial of the Wiznias' subdivision application, which the commission considered with regard to the application's effects on health and safety. (ROR, Item AA, p. 2.)
The transcript of the public hearing held before the commission on the special permit reveals the following. Counsel for the Wiznias contended that all requirements of the regulations were met. (ROR, Item V, p. 47.) The Wiznias' engineer, Alan Shepard, testified that because lot 16 contains wetlands to the south, west and northwest, the best way to access the lot without encroaching into the wetlands and without putting the road lower than the wetlands is to use a rear lot. (ROR, Item V, p. 25.) Commissioner Smith explained that "[o]ur regulations concerning rear lots when talking about a large parcel being divided into two or more lots, which is the case here, provide that we may only approve a rear lot where the use of that rear lot is necessary . . . with respect to the subdivision of the parcel as a whole." (ROR, Item V, pp. 34-35.) He then asked Shepard how the use of rear lot 16 is necessary to the use of the undivided parcel as a whole. Id. In response, Shepard expressed his belief that "necessary" means "there's no other better way to get to [the] parcel," but he conceded that the commission is endowed with the discretion to interpret the term as used in § 3.43(b). Id. Counsel for the Wiznias acknowledged that the regulation could be interpreted more than one way and suggested to the commission that "to give this any sort of sensible meaning, you've got to limit that to the lot you're CT Page 3837 developing," and not the entire parcel as a whole. (ROR, Item V, p. 36.) In opposition to the Wiznias' application, Attorney Dufour, counsel for adjacent landowners, Jeff and Betsy Hoos, pointed out that the property is able to be developed without the creation of rear lots; (ROR, Item V. p. 50); and that the Wiznias' representations of grading done on the Hoos' property, along with the subdivision map that were presented to the board, do not reflect the actual topography of the land that exists, and water runoff will flow into their lots from the development. (ROR, Item V. p. 51.)
As stated earlier, it is within the commission's discretion to determine whether and in what manner a particular zoning regulation section applies to a particular situation. Irwin v. Planning ZoningCommission, supra, 244 Conn. 627. This was acknowledged by the Wiznias' own expert. (ROR, Item V, pp. 34-35.) The commission interpreted § 3.43(b) as requiring unusual features to the parcel as a whole to make the use of a rear lot necessary for subdivision. (ROR, Item V, pp. 34-35.)
Thus, an issue central to the determination of this appeal is whether the term "necessary" in § 3.43 of the Woodbridge zoning regulations contemplates whether a rear lot is necessary to subdivide the parcel as a whole, or is necessary due to the unusual features peculiar to the proposed rear lot itself. In a case factually similar to the present appeal, the court, Downey, J., determined that the term "necessary" as used in Woodbridge zoning regulations § 3.43 means "necessary to allow the plaintiff to divide his property into two building lots, conforming in size and all bulk requirements." Sirowich v. Town Planning Zoning Commission, Superior Court, judicial district of New Haven, Docket No. CV 99 0423591 (August 1, 2000, Downey, J.). In Sirowich a landowner sought to divide property into two lots, keeping his existing house on the proposed rear lot. The property contained wetlands on the front of the parcel, and the plaintiff asserted that without the presence of wetlands, he would not need a special permit to subdivide. The Woodbridge planning and zoning commission denied the plaintiff's application on the grounds that "the application did not meet the requirements of Section 3.43 . . ." (Internal quotation marks omitted.)Id. Sustaining the plaintiff's appeal, the court determined, in part, that the "existence and location of the wetlands" on the front of the parcel were unusual features peculiar to that parcel and a creation of a rear lot in these circumstances was necessary for the plaintiff to subdivide, thereby meeting the criteria of Woodbridge zoning regulations § 3.43(b). See id.
In Sirowich, the court found that substantial record evidence CT Page 3838 demonstrated that a rear lot was necessary to subdivide the plaintiff's property due to the presence of wetlands on the front of the parcel. In the present case, no record evidence demonstrates that necessity. In the present appeal, the commission, like the court in Sirowich, determined that the term "unusual features peculiar to the land in question" pertained to the whole undivided parcel. (ROR, Item V, p. 34.) Unlike the plaintiff in Sirowich, however, the Wiznias do not claim that in order for them to subdivide their property, a rear lot must be created. Rather, the Wiznias claim that the rear lot is necessary due to what they believe is the best access to reach the proposed rear lot. (ROR, Item V, p. 34.) The record is devoid of evidence that a rear lot is necessary to subdivide the parcel. To the contrary, the record contains testimony given in opposition that the parcel is able to be subdivided without the rear lot. (ROR, Item V, p. 50.)
Although the Wiznias produced evidence that the proposed rear lot would comply with the technical requirements of § 3.43 relating to size and access, the record reveals no evidence demonstrating that the rear lot complies with the general requirement of § 3.43(b) that the creation of the lot is necessary to the subdivision of the parcel due to the parcel's unusual features. The record does contain evidence that the parcel may be subdivided without creating a rear lot. Accordingly, the commission was acting within its discretion when it interpreted its zoning regulations and determined that, in the Wiznias' situation, the rear lot was not necessary due to unusual features as required by § 3.43.
The Court finds the interpretation espoused by the Wiznias, that a special permit application for the creation of a rear lot pursuant to § 3.43 should be approved if the proposed rear lot itself has unusual features, would lead to "unreasonable or bizarre results" that would effectively abrogate § 3.43 by requiring rear lot approval whenever a lot with wetlands, steep topography, or some other unusual feature can be carved out of the whole parcel. Planning Zoning Commission v.Gilbert, supra, 208 Conn. 706. Section 3.43(b) allows approval of rear lots only in specific circumstances, one of which is the necessity of a rear lot in order to subdivide a parcel. See Sirowich v. Town Planning Zoning Commission, supra, Superior Court, Docket No. CV 99 0423591.
The Court finds the record contains substantial evidence to support the commission's denial of the Wiznias' special permit application on the ground that the "proposed use of rear Lot #16 was not made necessary by any unusual features peculiar to the land in question as set forth in Section 3.43(b)." (ROR, Item EE.) Accordingly, the commission's decision CT Page 3839 was not unreasonable, arbitrary or illegal.
 II
The Wiznias next argue that the commission violated their constitutional equal protection rights by engaging in selective treatment when it denied their application for a special permit to create rear lot 16. The Wiznias contend that "the Commission required [them] to submit a separate application for their special permit to create a rear lot, instead of considering that request as part of the subdivision application"; (Wiznias' Brief, pp. 12-13); and to attend separate hearings for the special permit and subdivision applications when the commission had not required other applicants to do the same. (Wiznias' Brief, p. 13.) The Wiznias argue further that the commission acted in bad faith by denying their special permit application with "no reasonable basis for doing so." Id.
The commission responds that the Wiznias were applicants seeking a permit to conduct a regulated activity. (Commission's Brief, p. 19.) The commission argues that the Wiznias have not provided any evidence to support their argument of selective treatment except for a self-serving letter from their attorney to the commission. (Commission's Brief, p. 20.) Additionally, the commission contends that the process of the Wiznias' application was not hindered in any way as a result of the requirement that they submit a special permit application as the commission held a public hearing and deliberated on the special permit application on the same day as, and prior to, its deliberations on the subdivision application pursuant to the Wiznias' specific request. (Commission's Brief, p. 20-21.)
"The Equal Protection Clause of theFourteenth Amendment to the United States Constitution is essentially a direction that all persons similarly situated should be treated alike . . . A violation of equal protection by selective [treatment] arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2). . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person . . ." (Citations omitted; internal quotation marks omitted.) CadlerockProperties Joint Venture, L.P. v. Commissioner, 253 Conn. 661, 670-71,757 A.2d 1, cert. denied, 531 U.S. 1148, 121 S.Ct. 1089, 143 L.Ed.2d 963
(2000). "[T]he requirement imposed upon [p]laintiffs claiming an equal protection violation [is that they] identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently." (Emphasis in original; citation omitted; internal quotation CT Page 3840 marks omitted.) Id., 672. Moreover, if a plaintiff "does not allege selective treatment based upon his race, religion, or any intentional effort by [the] defendants to punish him for exercising his constitutional right, [the plaintiff] must demonstrate that [the] defendants maliciously singled [him] out . . . with the intent to injure him." (Internal quotation marks omitted.) Thomas v. West Haven,249 Conn. 385, 393, 734 A.2d 535, cert. denied, 528 U.S. 1187,120 S.Ct. 1239, 146 L.Ed.2d 99 (1999) (violation of the plaintiff's equal protection rights found where evidence revealed commissioners' intentional treatment of plaintiff was selective and malicious compared to similarly situated applicants for zone changes). "Mere laxity in the administration of the law, no matter how long continued is not and cannot be held to be a denial of the equal protection of the law. To establish arbitrary discrimination inimical to constitutional equality there must be something more, something which in effect amounts to an intentional violation of the essential principle of practical uniformity." Bianco v.Darien, 157 Conn. 548, 559-60, 254 A.2d 898 (1969); Kroll v. Steere,60 Conn. App. 376, 385, 759 A.2d 541, cert. denied, 255 Conn. 909,763 A.2d 1036 (2000).
Our Supreme Court has determined that in a situation that involved alleged selective treatment by public officials having broad discretion to make decisions that relate to zone change applications, "the factors that render applicants similarly situated for comparison purposes necessarily are based upon the procedural requirements imposed on those seeking to obtain zone changes." Thomas v. West Haven, supra,249 Conn. 403. The court further determined that "[t]he appropriate group for comparison to the plaintiffs . . . [included] all applicants who were before the commission requesting a zone change during the same general time period as the plaintiffs, and who thus, theoretically, were subject to the same rules and requirements." Id. The appropriate group for comparison to the Wiznias includes all applicants who appeared before the commission requesting a special permit to create rear lots in subdivisions during the same general time period that the Wiznias' application was submitted and determined. See id.
A review of the record reveals the following. At an October 1, 2001 meeting, the commission held a public hearing on the proposed subdivision, in which lot 16 was to be created. (ROR, Item K.) The commission received additional exhibits, and no member of the public stood in support of the application. Attorney Dufour, representing adjacent property owners, opposed the Wiznias' application and stating that Woodbridge zoning regulations § 3.43 was not followed because the Wiznias did not submit an application for a special permit, notice that the application was submitted was not given and a public hearing on CT Page 3841 the application was not held. (ROR, Item K pp. 75-76.) After asking whether any other member of the public was present to speak in support or opposition of the application, and receiving no response, the commission continued the hearing to the next meeting. (ROR, Item K, p. 78.)
On October 9, 2001, counsel for the Wiznias sent a letter to the commission to apply for a special permit to create rear lot 16. In this letter, counsel stated that "[a]t the public hearing on the . . . subdivision application on October 1, a comment was presented to theCommission that the applicant had not submitted an application for a special permit for rear lots pursuant to Section 3.43 of the zoning regulations." (Emphasis added.) (ROR, Item O, p. 1). Counsel further stated: "As I understand the situation, historically the Commission has not required a separate application for . . . a special permit [for rear lots pursuant to § 3.43], and has taken the position that where rear lots are part of a proposed subdivision that approval for rear lots will be considered as part of the subdivision application. This has been the case in at least two recent subdivision applications, namely Racebrook Estates and Woodbridge Estates." Id.
The minutes of the commission's December 17, 2001 work session meeting, during which the commission deliberated on the special permit application for rear lot 16, reveal that the commission considered several issues regarding rear lots. Specifically, commissioners Fineberg and Smith stated that "the regulations do not favor rear lots." (ROR, Item, AA, p. 2.) The commission also took "into account the consideration afforded to other applicants when decisions were made." Id. "Discussion involved other subdivisions . . . [and commission chairman] Celotto stated that he was not sure that previous approval of rear lots might have had the same impact on neighbors." Id. Commissioner Luciani referred to "the precedent set by former rear lot approval [while commission member] Palmeri . . . [stated] that due to changes in the town conditions, the precedent does not have to stand." Id.
A review of the record thus indicates that at the time the special permit application was submitted, the Wiznias did not claim that the commission required the submission of a special permit application to create a rear lot. Rather, the Wiznias voluntarily submitted their special permit application for the creation of the rear lot in response to the neighbors' comments presented in opposition at the public hearing. In response to the submission of the application, the commission held a public hearing. (ROR, Item V.) During its deliberation on the special permit application, the commission considered other subdivisions with rear lots and prior rear lot approvals and indicated that conditions particular to the Wiznias' application may not have been present in the CT Page 3842 prior approvals. Neither the minutes, nor the transcript of the October 1, 2001 meeting demonstrate that the commission requested or required the Wiznias to apply for a special permit. (ROR, Item K; Item L.) Moreover, while the Wiznias' letter to the commission requesting a special permit for the creation of rear lot 16 mentioned two recent subdivision applications, Racebrook Estates and Woodbridge Estates, there is no evidence showing when those applications were submitted, if they were similar in all relevant aspects, when they were determined or in what manner they were determined. Nor is there record evidence of any other applications before the commission that were subject to the rules and regulations governing rear lots and subdivisions during the same time period as the Wiznias' application. In addition, there is no evidence showing malicious or bad faith intent by the commission in determining the Wiznias' application. Moreover, as discussed in part I, there is substantial record evidence to support the commission's basis for denying the Wiznias' application.
Accordingly, the Court finds the Wiznias have not met their burden of showing that they were treated differently from similarly situated applicants or that the commission determined their application with malicious or bad faith intent.
For the foregoing reasons, the Wiznias' appeal is dismissed.
Brunetti, J.